## 70745. NORRIS v. THE STATE.
### (335 SE2d 611)

BANKE, Chief Judge.

The appellant was convicted of criminal attempt to commit murder. On appeal, he contends that he was "denied" his constitutional right to effective assistance of counsel, due to certain alleged errors and omissions committed by his retained counsel before and during the trial of the case.

We note at the outset that appellant's counsel on appeal has made no attempt whatever to provide this court with a statement of the evidence presented during the trial. This is perhaps not surprising, since an examination of that evidence reveals overwhelming support for the jury's verdict.

On June 12, 1984, Robert Monroe Smith contacted Lt. Jimmy Mercer of the Waycross Police Department and informed him that the appellant was seeking to have him (Smith) kill an individual previously unknown to him but identified by the appellant as Kenneth J. Lester. It appears without dispute from the evidence that the appellant had previously guaranteed a credit union loan to Lester in the approximate amount of $25,000 and had assigned a bank certificate of deposit to the credit union as security for the loan. It further appears that as security for the loan guarantee, Lester had assigned to the appellant a $30,000 insurance policy covering his (Lester's) life and that the appellant had begun making the annual premium payments on this policy. Lester subsequently initiated bankruptcy proceedings resulting in the discharge of his indebtedness on the credit union loan and a consequent loss to the appellant of approximately $22,000.

During his conversation with Lt. Mercer, Smith agreed to arrange

a meeting with the appellant at which he (Smith) would appear to be willing to go along with the plan to kill Lester. Smith immediately telephoned the appellant and arranged to meet him at a certain restaurant at 8:30 p.m. that evening. At this meeting, the appellant agreed to pay Smith $3,000 to kill Kenneth Lester. However, because Smith owed the appellant $800 for signing his bond following a recent arrest, it was understood that the appellant would actually pay him only $2,200. The appellant told Smith that he would cut twenty-two $100 bills in half, bring one-half the bills to Smith's house later that evening, and deliver the other half to him after the job was done. The appellant did in fact appear at Smith's house later that evening and deliver to him the halves of twenty-two $100 bills.

Although the police had prevailed on Smith to tape each of his meetings with the appellant by means of a small tape recorder attached to his body, it was later determined that the recorder had not functioned properly during these first two meetings because the batteries were weak. During subsequent meetings between Smith and the appellant, this problem was corrected and intelligible recordings were obtained.

The next meeting between Smith and the appellant took place on June 14, 1984, upon the premises of the same restaurant where the first meeting had occurred. It was agreed at this meeting that when Smith killed Lester, he would telephone the appellant and state the code letters, "K. J. D. O. A." Upon hearing this, the appellant was to meet Smith at a local hospital, where Smith was to show him a photograph of Lester lying dead on the ground as proof that the deed had been done. The appellant would then give Smith the remaining halves of the twenty-two $100 bills.

Kenneth Lester was subsequently informed by Lt. Mercer of the proposed attempt on his life, and he agreed to cooperate with police in making a case against the appellant. He was photographed by Mercer lying on the ground with ketchup on his face and then instructed to leave home until further notice. His wife was instructed to call the Waycross Police Department the next day and report her husband missing.

On June 18, 1984, Smith called the appellant at his residence; stated, "K. J. D. O. A."; and immediately hung up. He then proceeded to the hospital to await the appellant; however, the appellant did not appear. Smith reached the appellant by telephone at his home the next day and arranged to meet him at a location near the appellant's house. Wired on this occasion both with the recording device and with a transmitter, Smith proceeded to the rendezvous point, where he was met by the appellant. After being presented by Smith with two photos of what purported to be Lester's dead body, the appellant instructed Smith to tear up the photographs and then handed

him the other halves of the twenty-two $100 bills.

Police officers immediately closed in and arrested the appellant as he was walking back to his house and proceeded to conduct a search of the house pursuant to a search warrant previously obtained for the occasion. Various personal and business papers belonging to the appellant were seized from his home during this search; however, the only such papers introduced into evidence at the trial were the insurance policy covering Lester's life and the assignment document pertaining to that policy. The state also introduced the testimony of one Alec Parnell to the effect that the appellant had previously offered to pay him $1,000 to kill Lester, telling him that Lester had "beat him out of a bunch of money." *Held*:

1. The first of the numerous reasons offered by the appellant for his contention that he received ineffective legal representation concerns trial counsel's failure to file a motion to suppress the tape recordings of the conversations between himself and Smith or to seek the exclusion of written transcripts made from these recordings. Defense counsel did in fact interpose a successful objection to the transcripts, which were excluded from the jury's consideration. With regard to the recordings themselves, these were clearly admissible pursuant to OCGA § 16-11-66, which "authorizes the recording of any communication sent by telephone or other means of communication where the communication is directly in the furtherance of a crime and one party to the communication consents to it." *Ramsey v. State*, 165 Ga. App. 854, 857 (303 SE2d 32) (1983). See also *Humphrey v. State*, 231 Ga. 855, 862-863 (204 SE2d 603) (1974), cert. den. 419 U. S. 839 (95 SC 68, 42 LE2d 66) (1974); *Mitchell v. State*, 239 Ga. 3 (235 SE2d 509) (1977); *Luck v. State*, 163 Ga. App. 657 (3) (295 SE2d 584) (1982).

2. The appellant contends that counsel failed "to review, inspect and confer with client about evidence intended to be used by the prosecution, which evidence was available through the district attorney's office . . . two months before trial. . . ." There is no support whatsoever for this assertion in the record, which reveals that defense counsel filed a *Brady* motion, a demand for a copy of the indictment and a list of witnesses, and a demand for "statutory discovery" pursuant to OCGA §§ 17-7-210; 17-7-211. The *Brady* motion sought information regarding the criminal records of the state's witnesses, particularly Smith, as well as information regarding any deals which may have been made with Smith to obtain his cooperation and testimony. It also sought the right to inspect any tangible evidence intended to be introduced at trial, such as the money, the photos, and the tape recordings. It appears from the transcript of the hearing on this motion that the district attorney complied with all of these requests and agreed to make all this information available.

Counsel on appeal suggests the existence of no favorable evidence or information which may have been overlooked by trial counsel but instead merely asserts in his brief that adequate inspection of "the insurance policy, assignment of benefits, and change of beneficiary, the chemical markings of the crime laboratory report, the bankruptcy petition, all of which were in the possession of the district attorney would have and could have provided the substance of additional motions." Absent some suggestion as to what relief these additional motions might have sought or what their legal foundation might have been, such assertions obviously provide no basis for a ruling that the appellant received inadequate legal representation at the trial level.

3. It is further asserted that trial counsel was remiss in not requesting that the appellant receive a psychiatric evaluation. However, the record does not suggest that the appellant suffered from any psychological disturbance, nor are we cited to any evidence which might have served as a basis for a special plea of insanity or a plea of not guilty by reason of insanity. Unsupported factual allegations contained in an appellate brief or asserted by way of affidavits attached to an appellate brief afford no basis for reversal and will not be considered by this court. See, e.g., *Tift v. State*, 132 Ga. App. 10 (2) (207 SE2d 261) (1974); *Miller v. State*, 122 Ga. App. 869 (2) (179 SE2d 265) (1970).

4. Similarly unsupported by the record is the appellant's contention that no character witnesses were called "despite his good reputation in the community, and the availability of such witnesses." The same is true of his contention that a motion for change of venue should have been based on "the existence of widely circulated and inflammatory local newspaper articles showing front page banner-sized letters depicting the alleged crime, and repeatedly naming the defendant as being charged with the crime. . . ."

5. The state's evidence raised no suggestion of entrapment, and the appellant was consequently not entitled to a charge on entrapment, absent an admission of guilt. See generally *Gregoroff v. State*, 248 Ga. 667, 670-672 (285 SE2d 537) (1982); *Menefield v. State*, 165 Ga. App. 545 (301 SE2d 902) (1983). No such admission was forthcoming, the appellant maintaining instead that he gave Smith the $2,200 only to induce Smith to leave him alone and with no intention of actually procuring Lester's death or any actual belief that Smith would go through with the proposed plan. Under the circumstances, there is certainly no reason to believe that the appellant would have received a more favorable verdict had he admitted his criminal intent in order to obtain a charge on entrapment; and we decline to characterize defense counsel as ineffective simply because he did not prevail upon the appellant to do so.

6. The fact that defense counsel made no requests to charge nor

any objections to the charge obviously establishes no lack of effectiveness on his part absent some deficiency or impropriety in the charge which was harmful to the appellant. The only such errors asserted by counsel on appeal are that the charge should not have contained an instruction on parties to a crime (OCGA § 16-2-20) and that it should have contained an instruction on criminal solicitation (OCGA § 16-4-7) as a lesser included offense. With regard to the latter issue, the Supreme Court has held that "the [criminal solicitation] statute only embraces *language* which creates a clear and present danger that a felony will be committed. . . ." (Emphasis supplied.) *State of Ga. v. Davis*, 246 Ga. 761, 762-763 (272 SE2d 721) (1980). The evidence in the present case establishes without dispute that to the extent the appellant may have attempted to induce Smith to commit a crime, he went well beyond the mere use of language and paid him $2,200 for that purpose. Thus, the evidence did not warrant a charge on criminal solicitation as a lesser included offense. With regard to the charge on parties to a crime, the evidence was certainly sufficient to support a finding that the appellant was a direct participant in the crime of criminal attempt to commit murder and thus that he was "concerned in the commission of a crime" pursuant to OCGA § 16-2-20 (b) (1). Therefore, it was not error to charge the entire code section on parties to crimes. See *Brooks v. State*, 250 Ga. 739, 741 (2) (300 SE2d 810) (1983).

7. Although trial counsel filed a motion to suppress the evidence seized during the search of the appellant's home and vigorously argued the motion prior to trial, counsel on appeal accuses him of being remiss in not making certain additional arguments in support of this motion. However, the only items seized during the search of the appellant's home which were introduced into evidence were a copy of the insurance policy on Lester's life and the written assignment of that policy to the appellant. This same evidence was adduced independently via Lester's testimony and the testimony of an agent of the insurance company which issued the policy. Thus, any error which may have been committed in denying the motion to suppress was harmless. Cf. *Nix v. Williams*, ___ U. S. ___ (104 SC 2501, 81 LE2d 377) (1984).

8. We have carefully considered the remaining allegations advanced by the appellant in support of his contention that he received ineffective representation of counsel and have determined that they are wholly without merit. "Simply because other lawyers might have exercised different judgments and conducted petitioner's defense in a different manner does not require a finding that defense counsel's representation of petitioner was so inadequate as to amount to a denial of effective assistance of counsel. (Cit.)" *Austin v. Carter*, 248 Ga. 775, 779 (285 SE2d 542) (1982). Based on an exhaustive examination

of the record and transcript, we are convinced that the appellant's conviction resulted not from any deficiency in his legal representation but from the overwhelming evidence of his guilt.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED SEPTEMBER 3, 1985 —
REHEARING DENIED SEPTEMBER 24, 1985 —

*Elmer H. Young III*, for appellant.

*Harry D. Dixon, Jr., District Attorney, Richard E. Currie, Assistant District Attorney*, for appellee.