A91A0214. TIMBERLAKE v. THE STATE.
A91A0215. BROOME v. THE STATE.
(406 SE2d 537)

SOGNIER, Chief Judge.

Edward Lee Timberlake and William P. Broome were each charged with three counts of violating the Georgia Controlled Substances Act. Broome was also charged with possessing a firearm during the commission of a crime and trafficking in cocaine. They were tried jointly and convicted by a jury on all counts, and each appeals from the judgment and sentence entered on the jury's verdicts.

Construed to support the verdicts, the evidence adduced at trial showed that Eddie Madeira, who was married to the former office manager of appellant Broome's mortgage business, was cooperating with the Rockdale County Police Department and the metropolitan Atlanta DEA State and Local Task Force in order to assist his son, who had been charged with a drug offense. As a result of information given him by Madeira, Task Force Group Supervisor Raleigh Lopez assigned several agents to observe a meeting between Madeira and Broome at a local restaurant. After that meeting, numerous conversations (which were monitored) took place between Broome and Lopez during which Lopez posed as Madeira's cousin from Puerto Rico who had $250,000 and wished to buy cocaine. Eventually, a deal was made for the sale of half a kilogram of cocaine, and Broome arranged for appellant Timberlake, who was in possession of the cocaine, to wait at a gas station nearby while Broome met with Lopez in a restaurant parking lot in Conyers to consummate the sale. A videotape was made of that meeting and was admitted into evidence and shown to the jury.

The tape and other evidence showed that because Lopez would not agree to advance the purchase price before seeing the cocaine, Broome agreed to furnish a small sample in order to get the money. Broome then left the parking lot, drove to the gas station where Timberlake awaited, and returned with a plastic bag containing a sample of a white powdery substance, later identified as a little over a half ounce of 80 percent cocaine. Lopez testified that after Broome gave him the sample, he was sitting in his car in the restaurant parking lot along with Special Agent Tony Pettigrew of the DEA when he ob-

served Timberlake drive up in his own car and park nearby. Lopez then told Broome he was satisfied with the sample and wanted to see the rest of the cocaine, and they walked to Timberlake's vehicle. Timberlake's passenger window was open, and Lopez leaned in, showed a bag containing $25,000 in cash, and asked for the cocaine, whereupon Timberlake lifted a towel, revealing a package of white powder. In response to Lopez's question regarding its quality, Timberlake indicated the cocaine was "between 80 to 90 percent" pure, and broke the plastic bag to show Lopez the powdery consistency of the cocaine.

When Lopez indicated he would be interested in buying another two kilograms, Timberlake replied that he had two more at his home, but Lopez would have to go through Broome. At that point, Lopez gave the prearranged signal for the arrest. The package under the towel was seized by Agent Pettigrew, and it was later identified as containing 448 grams (15.7 ounces) of 79 percent cocaine. An inventory search after Timberlake's car was impounded revealed a leatherette case containing triple beam scales and a box of plastic ziplock bags in the hatchback, and a plastic bag containing a white powdery substance, later identified as a little over an ounce of 80 percent cocaine in the glove compartment. A .38 caliber handgun was found in the glove compartment of Broome's car.

1. Both appellants enumerate error in the prosecutor's questioning of Broome on cross-examination. The exchange in issue was as follows: Q. "Isn't it true Mr. Timberlake asked you to lie to help him in this case?" A. "No, sir." Q. "And you never told your wife that?" Both appellants argue that because the prosecutor knew Broome's wife had clearly invoked her privilege not to testify, see OCGA § 24-9-23, it was error to question Broome in a manner from which the jury could infer that his wife's testimony would indicate he was lying. The record reveals, however, that when defense counsel objected, a conference was held with the trial judge and defense counsel to discuss the matter outside the presence of the jury, during which the district attorney stated that he was "just going to withdraw the question." No objection was then made by either defense counsel, neither counsel moved for a mistrial, and the prosecutor moved on to another line of questioning. It is well established that if appellants deemed the remedy inadequate, it was encumbent upon them to seek curative instructions or move for a mistrial, which they did not do. See generally *Barksdale v. State*, 161 Ga. App. 155, 158 (4) (291 SE2d 18) (1982). " 'Objections not raised at trial cannot be raised for the first time on appeal, as they are deemed waived. (Cit.)' [Cit.]" *Hight v. State*, 195 Ga. App. 727, 730 (6) (394 SE2d 636) (1990).

2. Timberlake contends his cross-examination was improperly limited when he was prevented from questioning Lopez about the DEA's use of condemned funds in general. We do not agree. Lopez

had testified that one reason not all his conversations with Broome had been recorded was that all six of his office's tape recorders were in use at the time. Timberlake sought to discredit Lopez's testimony by questioning him regarding forfeited funds in general, purportedly to show that the agency possessed sufficient funds to enable it to have purchased sufficient recording equipment to record all the conversations in issue. The State objected on relevancy grounds, and the trial court sustained the objection.

Questions of the relevancy of evidence are within the trial court's discretion. See *Queen v. State*, 182 Ga. App. 794, 796 (2) (357 SE2d 150) (1987). " 'The right of cross-examination is not abridged where the examination is limited by the trial court to relevant matters by proper questioning.' [Cit.]" *Ballentine v. State*, 194 Ga. App. 560, 561 (2) (390 SE2d 887) (1990). " 'Evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter should be excluded.' [Cit.]" *Robinson v. State*, 182 Ga. App. 423, 428 (20) (356 SE2d 55) (1987). Although the line of questioning excluded might have established that sufficient funds existed to buy additional tape recorders, it could not have established that the funds would have been allocated in the manner suggested by appellant or, more importantly, that the conversations Lopez testified he had with Broome did not occur. Indeed, Broome admitted the conversations occurred but testified that he had lied to Lopez during those conversations. Since it was the existence and the content of those conversations which was in issue, the trial court did not abuse its discretion in excluding this line of cross-examination. See *Ballentine*, supra.

3. Broome testified that he was 44 years old, had "never liked people who messed with drugs and [had] never done drugs," and was "not a drug dealer of any kind." He testified that, through his mortgage business, he had assisted Madeira in obtaining a loan on his house, and at that time, because his business was slow, had borrowed $4,000 or $4,500 of the loan proceeds from Madeira to catch up on some business bills. Several weeks before the arrest, Broome had encountered Madeira by chance, at which time Madeira had mentioned his own financial problems and the fact that he needed the money owed him, which was due. Broome testified he also knew that Madeira had recently had a heart attack and had no group insurance to cover the hospital bill. During the course of the next several weeks, according to Broome's testimony, Madeira repeatedly called Broome, mentioning that he and his wife would lose their home if they did not come up with some cash.

Madeira also informed Broome that his cousin from Puerto Rico was visiting, had $250,000, and wanted to buy some cocaine. Madeira suggested that if Broome knew anyone from whom his "cousin" (in

reality Lopez, who was posing as Madeira's cousin) could buy drugs, both Madeira and Broome could solve their mutual financial problems by earning money putting Madeira's "cousin" in touch with a drug dealer. Broome explained that Madeira may have known that Broome was acquainted with drug dealers because Madeira and his wife had been invited to several Christmas parties at Broome's home at which those people were also in attendance. Broome testified that he "had people come to me before and asked me [where to buy drugs] and I always turned them down." However, this time, after initially putting Madeira off several times, he finally agreed because he "thought the world of" Madeira's wife because of her loyalty to Broome during her employment, and had been motivated to become involved in this scheme to sell cocaine by his desire to prevent Madeira's wife and her mother (who lived with the Madeiras) from losing their home because of Madeira's precarious financial situation. He testified he acceded to Madeira's requests only after Madeira called him several times to say his "cousin" was about to leave town with his money, putting pressure on Broome to come up with a cocaine supplier.

Broome asserted he did not know the source of the cocaine because he arranged through his friend "Minnie" from Alabama to have someone named "Tony" place it in Timberlake's car and tell Timberlake it was jewelry that Broome was going to sell so that Broome could repay a debt he owed Timberlake. Broome claimed he did not know either Minnie's or Tony's last name. He did not deny the conversations with Lopez, or that he had participated in the deal, but testified that many of the things he had told Lopez in those conversations were lies.

Lopez testified, however, that it was "[a]bsolutely not" possible that Madeira had entrapped Broome because, during taped telephone conversations, Broome had himself revealed a history of drug dealing, including mentioning to Lopez that he had been "doing this over a number of years, and had over three sources of cocaine. And he was talking kilos not grams. When you are talking to people who are capable of distributing, buying, selling kilograms, you know that they did not start in business yesterday. They have been around for a while."

Broome contends the trial court erred by denying his motions for a directed verdict of acquittal on the issue of entrapment made after the State rested and after the close of the evidence, because the State did not call Madeira to testify, and thus failed to rebut appellant's prima facie showing that he was entrapped by Madeira, who was acting as the State's agent. We do not agree.

Although we have held in a number of cases that the State's failure to produce the confidential informant to rebut a defendant's prima facie showing of entrapment required a directed verdict of ac-

quittal, see, e.g., *Robinson v. State*, 145 Ga. App. 17 (243 SE2d 257) (1978); *Harpe v. State*, 134 Ga. App. 493, 495-497 (2) (214 SE2d 738) (1975), the Supreme Court has held there is no "*per se* rule that a defendant is entitled to a directed verdict where the informant is not called to rebut the defendant's testimony of entrapment. A distinction must be made between evidence which *raises* a defense of entrapment and which would require that the jury be charged as to the law of entrapment and the burden of proof thereon, and evidence which, under the standards set out in [OCGA § 17-9-1], would *demand* a finding of entrapment and, therefore, a directed verdict of acquittal." (Footnote omitted.) *State v. Royal*, 247 Ga. 309, 310 (275 SE2d 646) (1981). Here, as in *Royal*, while there was in the accused's testimony some evidence of entrapment, this evidence was rebutted by other testimony. Thus, as in *Royal*, the evidence did not demand a finding of entrapment, but rather presented a question of fact for determination by the jury. The trial court properly charged the jury on entrapment, and the jury decided the issue adversely to Broome. The trial court did not err by denying Broome's motions for a directed verdict on this issue. Id. at 309-312 (1).

4. The verdict form set forth each co-defendant and each charge separately, and the trial court gave explicit instruction to the jury explaining the separate and differing charges against Broome and Timberlake, charging the jury that "you must deal with each count separately. You can find any way you want to. You do not have to find the same [as to both defendants] on any count." Given these thorough precautions, we find no merit in Broome's contention that the charge was insufficient to inform the jury it could split the verdict on any count.

5. Broome alleges the trial court erred by finding that he had effective assistance of counsel at trial. His contention in this regard is based largely on an incident during the trial involving a statement overheard by Broome's sister, made by a person Broome's sister believed was a juror, concerning the fact that she (the juror) had already made up her mind about the case because of Timberlake's family's history of criminal activity. The sister notified trial counsel of the conversation, and Broome alleges his trial counsel was ineffective in failing to have the possible misconduct noted on the record. Citing *Jowers v. State*, 260 Ga. 459, 461-462 (2) (396 SE2d 891) (1990), Broome alleges that trial counsel should have investigated the juror's conduct further.

"*Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), establishes the benchmarks for determining whether trial counsel's representation of a defendant in a criminal case was so deficient as to result in the denial of the defendant's right to assistance of counsel under the Sixth Amendment." *Jowers*, supra. Under *Strick-*

*land*'s two part test, a showing must be made that counsel was deficient, and that the deficient performance prejudiced the defense. In *Jowers*, the Supreme Court reversed a murder conviction where trial counsel "did not 'adequately investigate the case,' . . . did not 'make the adversarial testing process work,' and . . . his omissions in this regard cannot be considered 'sound trial strategy.' " Id. at 462. However, in *Jowers*, key elements of the defendant's defense were supported by the State's scientific reports, which trial counsel failed to present to the jury, and thus the required showing of both elements in the *Strickland* test was made. In the case sub judice, the trial counsel testified at the hearing on Broome's motion for a new trial, explaining that he had consulted both his client and Timberlake's counsel, and a decision had been arrived at not to do anything further about the information provided by Broome's sister, but rather to notify the court of the possible problem, which was done. Thus, unlike the situation in *Jowers*, the issue allegedly not investigated was not a substantive part of Broome's defense, but was merely an isolated decision concerning trial strategy. "A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. [Cit.]" *Garrett v. State*, 196 Ga. App. 872, 874 (1) (397 SE2d 205) (1990). Given trial counsel's experience and his conduct in general in defending Broome, we find that the trial court's conclusion that Broome had been afforded effective assistance of counsel was not clearly erroneous.

6. Because trial counsel elected not to pursue the incident, and on motion for a new trial Broome's sister did not testify to what she had heard and present counsel did not investigate further or identify the juror, no creditable evidence of juror misconduct was shown, and consequently we cannot say the trial court erred by failing to investigate the incident further. Compare *Lockridge v. State*, 260 Ga. 528 (397 SE2d 695) (1990).

7. Broome contends the trial court erred by failing to merge Count Three (possession and delivery of cocaine) with Count One (trafficking in cocaine) and by sentencing him on both counts. We do not agree. Count Three related to the "sample" half ounce, while Count One referred to the larger quantity in Timberlake's car. Broome testified he had obtained the sample from "Minnie," and kept it in his pocket, while the larger package and the drugs in the glove compartment had been placed in Timberlake's car by "Tony." Although the State's evidence showed that Broome actually took the "sample" from the back of Timberlake's car, the two quantities were packaged separately and had slightly different purities. From this evidence, a jury could have concluded that the two quantities were intended to be utilized in different transactions. Accordingly, because different facts were involved in the transfer of the two quantities, the

two counts do not meet the requirements for merger set forth in OCGA § 16-1-7.

8. Broome maintains the trial court erred by denying his motion for a continuance to enable him to engage new counsel, made on the morning his trial began. " 'A motion for continuance is addressed to the sound discretion of the trial court, and this court will not interfere unless it is clearly shown that the court abused its discretion. OCGA § 17-8-22.' [Cit.]" *Gignilliat v. State*, 196 Ga. App. 773 (2) (397 SE2d 52) (1990). Broome's motion was based on his desire to retain other counsel because of his appointed trial counsel's decision not to call character witnesses. We find no abuse of the trial court's discretion in denying the motion in light of the fact that it was made on the day of trial, particularly given the fact that calling character witnesses may have prejudiced Broome's defense by making possible introduction by the State of his prior felony convictions. See generally *Davis v. State*, 190 Ga. App. 178-179 (378 SE2d 519) (1989).

9. Broome raised no objection at trial to the trial court's charge on impeachment being given immediately following the charge on defendant's testimony, and consequently has not preserved his right to enumerate it as error. See *McCounly v. State*, 191 Ga. App. 266, 268 (4) (381 SE2d 552) (1989). Although this court will consider and review charges regardless of whether objection was made where there has been a substantial error which was harmful as a matter of law, see id.; OCGA § 5-5-24 (c), the error complained of here is not such a charge. The charge on impeachment actually followed several charges regarding witnesses' credibility, and no significance may be inferred from the order of the charges. Accordingly, we find no error. *McCounly*, supra.

*Judgments affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 5, 1991 —
REHEARING DENIED JUNE 19, 1991 — ▮▮▮▮▮▮▮▮

McGuire, Cook & Martin, John J. Martin, Jr., for appellant (case no. A91A0214).

Ronald C. Conner, for appellant (case no. A91A0215).

Robert F. Mumford, District Attorney, William F. Todd, Jr., Assistant District Attorney, for appellee.