## A92A2288. HITE v. THE STATE.
(430 SE2d 125)

BIRDSONG, Presiding Judge.

Appellant Daniel Hite a/k/a Daniel Lamar Hite appeals his judgment of conviction of three counts of child molestation in violation of OCGA § 16-6-4, and his sentence. Appellant enumerates two errors; both directly relate to a claim of lack of adequate legal representation at trial.

Appellant's stepdaughter, who was age 13 at time of trial, testified appellant committed acts of child molestation upon her, as averred in each of the three counts of the indictment, and that appellant's molestive conduct had occurred less than a year but more than a month earlier. Subsequently, she told Ms. Collier, who was the social service specialist for the Department of Family & Children Services (DFCS), that appellant had been touching her "and stuff."

Appellant's ex-wife, the child's mother, testified as an eyewitness to one count of child molestation, as follows: On December 9, 1990, she entered her daughter's bedroom and observed her daughter straddling appellant; her daughter was sitting on appellant's pubic area

with her nightgown pulled up and no underpants on; appellant had his shorts pulled down and was totally exposed from the waist down. The child also testified as to this incident that appellant was holding her against his private parts as she struggled to get free.

Mr. Cagle, a school counsellor, testified that appellant's step-daughter was referred to him on December 10, 1990, by the school nurse. The child said her stepfather had tried to sexually molest her the night before; she did not give any explicit details about the encounter. Mr. Cagle reported the incident to DFCS.

Ms. Collier, social service specialist of DFCS, testified that on December 10, 1990, appellant's stepdaughter told her about the events surrounding the December 9 incident. The stepdaughter also said there were several other times when such things happened. Ms. Collier also testified that, on December 11, 1990, the stepdaughter told her of certain other acts, including the touching of her private parts by appellant. Ms. Collier also talked with appellant who stated: "He used to physically discipline [his stepdaughter] and because she bruised easily he resorted to trying to love her more and that that's when the physical touching began. . . . [Appellant] just allowed [his stepdaughter] to do her own thing which was getting on top of him and rubbing. [Appellant told Ms. Collier] that he should have stopped, that he knew it was wrong, that he had thought of coming for help about a month before [Ms. Collier] made contact with him." Appellant also "admitted to [Ms. Collier] that he had touched [his stepdaughter] inappropriately. . . . [Appellant further stated:] 'I never got an erection and we never had intercourse.'"

Appellant testified in his own defense and repeatedly denied engaging in any act of molestation regarding his stepdaughter; he offered explanations for the various conduct and statements attributed to him and claimed that certain of his responses had been incorrectly recorded. During the course of his testimony, appellant made an admission in open court that his stepdaughter sat on his groin area "a lot," but later gave contradictory testimony that she had never sat on his groin area. Appellant denied any sexual arousal or act of molestation during the December 9 incident. However, he admitted in open court that his stepdaughter was sitting on his rib cage when they started scuffling, and that his jogging shorts slid down a little. Nevertheless, appellant maintained that his pubic hair and penis were not exposed at any time and that his stepdaughter had her nightgown tucked under her when she was sitting on him. Appellant also identified his handwriting in two letters which he had written to his ex-wife. Appellant testified in an attempt to explain the contents of one of the letters, State's Exhibit No. 3. He testified that, although this letter read: "No matter what happened, I never had sex with her . . . I would let her rub around until she was through and then that was

it," that he meant that his stepdaughter would rub around on his back; just rub his back and shoulders, and that he was not talking about other parts of his body. And, that when he wrote, "I was scared not to let her, because I was scared she would tell," he was referring to the fact that his ex-wife had gotten "on to us several times for [his stepdaughter] sitting on [his] back, rubbing the back of [his] legs and rubbing [his] shoulders. . . . [He would] let her do it, but [he] was always . . . afraid she would tell [his ex-wife] and [his ex-wife would] come around and pitch a fit over nothing."

In addition to the evidence above summarized, State's Exhibit Nos. 2 and 3, letters written by appellant, were introduced but not expressly admitted into evidence. However, these exhibits are contained in the trial record and attached at the end of State's Exhibit No. 1. The record reflects that State's Exhibit Nos. 2 and 3 were tacitly admitted in evidence by the trial court (*Morgan v. State*, 204 Ga. App. 178, 181 (1c) (419 SE2d 313)). In this regard, after the State tendered the two exhibits in evidence, appellant's counsel immediately requested and was given permission to recall appellant to respond to some of the "things" in the letters. Appellant thereafter explained to the jury the meaning that he intended in certain statements in the two letters. *Held*:

1. Appellant enumerates as error no. 2 that the trial court failed to insure appellant received a fair trial, that is, a trial the results of which can be trusted. Appellant asserts in support of this contention instances regarding the admission of certain evidence, including the admission of State's Exhibit No. 1 (a 35-page document from The Highland Institute For Behavioral Change, Inc.) by way of stipulation, the failure to introduce character evidence, and allowing a juror to serve who expressed a belief that she may be related by marriage to appellant's stepdaughter, and the failure of counsel to tender any requests for charges. The record shows that appellant failed to preserve any of these issues by failing to object timely and specifically thereto, by expressly waiving any claim of error, or by acquiescing expressly or by silence as to the particular issue under trial court consideration. See generally *Tatum v. State*, 259 Ga. 284, 287 (3) (380 SE2d 253); *Easterwood v. State*, 259 Ga. 164 (2) (377 SE2d 857); *Wilburn v. State*, 199 Ga. App. 667, 669 (2) (405 SE2d 889); *Hawkins v. State*, 195 Ga. App. 739 (2) (395 SE2d 251); *Ray v. State*, 187 Ga. App. 451, 452 (370 SE2d 629). Further, regarding appellant's failure to object to certain evidence presented by the State, "[a]ll evidence is admitted as a matter of course unless a valid ground of objection is interposed." (Citations and punctuation omitted.) *Smarr v. State*, 199 Ga. App. 572, 573 (2) (405 SE2d 561). Thus, none of these issues has been preserved per se for appellate review.

Moreover, assuming arguendo, error had occurred as asserted in

appellant's enumeration of error no. 2, in view of the overwhelming admissible evidence of appellant's guilt of all three counts of child molestation of which he was found guilty, this error, even if of constitutional magnitude, would be harmless. *Palmer v. State*, 186 Ga. App. 892, 897 (3) (369 SE2d 38). There remains, however, the question of the adequacy of appellant's defense counsel at trial.

2. Appellant contends the trial court erred in denying a new trial on grounds that appellant was denied effective assistance of counsel at trial. The proper test to be applied to this issue is a two-part test, that is, "a showing must be made that counsel was deficient, and that the deficient performance prejudiced the defense." *Timberlake v. State*, 200 Ga. App. 64, 69 (5) (406 SE2d 537), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674). Pretermitting the first tier of this test is whether the representation of appellant by his trial defense counsel prejudiced appellant's defense. "The evidence of appellant's guilt is overwhelming. He has failed to demonstrate that there is a reasonable probability that, absent the alleged errors, the verdict of the jury would have been different." *Johnson v. State*, 761 P2d 484, 490 (Okl. 1988). Giving due consideration to every alleged professional error attributed to appellant's trial defense counsel on appeal, and "[b]ased on an exhaustive examination of the record and transcript, we are convinced that the appellant's conviction resulted not from any deficiency in his legal representation but from the overwhelming evidence of his guilt." *Norris v. State*, 176 Ga. App. 164, 168 (8) (335 SE2d 611). Accordingly, we find this enumeration of error also to be without merit.

*Judgment affirmed. Andrews, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

With respect to Division 1, which addresses appellant's second enumeration of error, he is not trying to raise unpreserved issues directly. He argues that counsel's failure to object and certain other failures and actions should have alerted the trial court to the realization that counsel was not rendering effective assistance so that defendant was not receiving a fair trial. The majority concludes that any error was harmless because of the overwhelming evidence. But that is precisely part of what appellant complains of, i.e., that counsel fatally stipulated the strongly inculpatory Highland Institute report and failed to object to evidence of prior similar acts. If counsel's performance *was* deficient in allowing into evidence the report, by stipulation, and the instances of other incidents, by failure to object, we would have to consider the evidence without this and without the evidence related to it, such as defendant's explanations of these items.

The underlying question is whether it was demonstrated that

counsel was constitutionally ineffective in the instances asserted, which is appellant's first enumeration of error. I agree that he was not. As to the damaging Highland Institute report, counsel testified that he stipulated its admissibility after consulting with defendant; that he was well aware that it contained damaging evidence but that the testimony of the preparer of this report, who was unavailable due to surgery, could prove more damaging; that he told defendant that the State would probably seek a continuance if they did not stipulate the report; and that defendant insisted they proceed with trial. As to the similar incidents, they would have been admissible. With respect to character witnesses, counsel discussed this possibility with defendant but advised they "probably wouldn't do him any good." That was a matter of judgment and trial tactics that does not constitute ineffectiveness. Concerning the juror who possibly was related to the victim, counsel discussed the options with defendant. The court had given the options of a mistrial, proceeding with 11 jurors, or proceeding with the juror. Defendant chose the latter, relying on counsel's knowledge of the juror and his satisfaction with the jury as a whole. None of this is constitutional deficiency in counsel's professional performance.

Counsel not having been "ineffective" in the particulars claimed, appellant cannot fault the trial court either, for failing to insure a fair trial the results of which could be trusted.

DECIDED MARCH 12, 1993 —
RECONSIDERATION DENIED MARCH 30, 1993

*Dupree, Johnson & Poole, Hylton B. Dupree, Jr., A. Gregory Poole*, for appellant.

*Darrell E. Wilson, District Attorney, Brett W. Ladd, Assistant District Attorney*, for appellee.