### A96A0093. WILKES v. THE STATE.
(471 SE2d 332)

McMURRAY, Presiding Judge.

Defendant was charged in a special presentment with armed robbery (two counts), kidnapping, burglary, and violation of the Georgia Controlled Substances Act (two counts). Prior to trial, the State's attorney "ask[ed] the Court to dismiss the last two counts," and the remaining charges were tried before a jury. The evidence adduced at his trial, including the testimony of defendant's accomplice and defendant's custodial confession, revealed the following: Using a .25 caliber automatic handgun, defendant took cash and prescription narcotics from the immediate presence of Lauren Smith, the manager of Apothecary Shoppe Pharmacy on Prestley Mill Road, in Douglas County, Georgia. Lauren Smith affirmed that another

employee, "Tammy Daniell[,] was working behind the cash register[, . . . a]nd David Gammon was behind the counter where the pharmacy materials are." Defendant asked for an item and followed Lauren Smith to the counter, when she "felt a little shove." "Tammy took a deep sigh and turned around and that's when [Lauren Smith] saw the pistol." Defendant "told [them] to move over to the side, and he told Dave that he wanted the drugs." David Gammon "handed [defendant] the keys to the narcotics box." Lauren Smith "took the money out of the register . . . [and] put it in his bag." Using handcuffs and duct tape that he brought into the store with him, defendant "handcuffed all three [employees] and then taped [their] legs together." Defendant ordered them "to get in the back of the room, the storage room."

Detective Don Walker of the Douglasville Police Department responded to a "hold-up alarm activated at that location." As Detective Walker entered the pharmacy, defendant "came flying to the back of the storage room, like he was trying to find a way out." He eventually fled "out the back door." Detective Walker returned to his patrol car to summon help and saw defendant run "towards the parking lot." A "brown Chrysler-type vehicle slowly move[d] out of a parking space." This vehicle refused Detective Walker's command to halt, evaded a backup officer, and drove all the way around the Apothecary Shoppe, "back towards the rear of the building out into a grassy area." The passengers fled into the tall grass. As Detective Walker was establishing a "perimeter with the car that was then left, a radio dispatch [announced] a hostage situation nearby, [at the] Lane residence on Prestley Mill Road. . . ." By the time Detective Walker arrived at the Lane residence, the hostage situation had ended. There, Detective Walker "observed the same individual that [he] had seen in the Apothecary Shoppe . . . as well as the white female [driving] the brown Chrysler. . . ." Marian McCartney, the daughter of Harold Lane and Sue Lane, was at her parents' residence, speaking to her mother (who was not at home) on the telephone when she noticed defendant, "that man right there[,] standing at the door." She turned away, but when she looked back, she said, "my God, he's got a gun, and slammed the phone down." Defendant "grabbed [Marian McCartney] by the arm." He "demanded that [she] drive him to the expressway without getting on Prestley Mill Road." Marian McCartney affirmed that defendant had "a gun in his hand the whole time[, . . . and so defendant, his female accomplice, and Marian McCartney] got into [her] car," where defendant grabbed her again. Before Marian McCartney could exit her parents' driveway, they "were surrounded by the sheriff's department and police." At that point, "the girl in the back seat was yelling for her purse, and [defendant] got the purse and took out a cigarette cellophane of like eight or so white

pills and took them all." In so doing, defendant "laid it [(the gun)] down." Marian McCartney "took the gun and opened the door and ran."

Iris Elaine Johnson, defendant's accomplice, confirmed that she and defendant went to the Apothecary Shoppe "[t]o rob it." She was looking as defendant "kicked it [the door] open," at the Lane residence. She also confirmed that Marian McCartney "was at gunpoint, didn't have much choice," when she left her parents' house with defendant. In a custodial statement, defendant "blurted out you got me redhanded, . . . and he . . . continue[d] to volunteer information," without requesting an attorney.

The jury found defendant guilty on all four counts. His motion for new trial was denied, and this appeal followed. *Held*:

1. Defendant first enumerates the denial of his motion for new trial on the ground that his custodial statements were involuntary and should have been suppressed, due to his ingestion of several tablets of methadone immediately before his arrest.

At the hearing on the voluntariness of defendant's custodial statements, Douglas County Sheriff's Detective Eddie Morris testified that defendant "seemed coherent, alert to the questions and was able to answer the questions . . . asked him." A tape of this interview was played for the trial court, on which defendant expressly stated: "I'm not intoxicated." Rather, he took ten 10-milligram pills of methadone "so [he] wouldn't be sick for a day or so."

" 'The trial court's findings as to factual determinations and credibility relating to the admissibility of statements will be upheld on appeal unless they are clearly erroneous. (Cit.)' *Henson v. State*, 258 Ga. 600, 601 (1) (372 SE2d 806) (1988). Based on the testimony of the detective who interviewed the [defendant in the case sub judice], the trial court was authorized to conclude that [defendant's] waiver of his constitutional rights was voluntarily and knowingly made, and was not the product of a will overborne by the influence of narcotics." *Weddington v. State*, 191 Ga. App. 738, 740 (7) (382 SE2d 661).

2. Next, defendant contends he was erroneously "made to appear before the jury in a prison uniform." The record reflects that defendant made numerous pretrial motions, including a motion for continuance, on various grounds. But he did not object to wearing a bright orange jump suit until the second day of trial, i.e., after the jury had been impaneled and sworn, and the presentation of evidence was well under way. The record further reflects that the Sheriff's office had no civilian clothes that would fit defendant, who had gained "thirty or forty pounds . . ." since his arrest. Defendant further spurned an offer of clothes "from the Salvation Army, [explaining] 'I'm not a bum on the street, and I don't wear clothes like that.' "

"Although the defendant had the right to wear civilian clothes rather than prison clothing at his trial ([cit.]), this is a procedural right that may be lost where there is a failure to assert it properly. [Cits.] See also *Timmons v. State*, 223 Ga. 450 (1) (156 SE2d 68), and cit." *Sharpe v. State*, 119 Ga. App. 222 (1) (166 SE2d 645). In the case sub judice, we hold that defendant waived any valid objection to his attire by failing to urge this matter before trial. *Kerr v. State*, 194 Ga. App. 604, 605 (3) (391 SE2d 449).

3. Defendant contends the trial court erred in permitting the State's attorney to place his character in issue.

Defendant's Exhibit 1 "consists of a five-page letter handwritten, signed by Elaine [Johnson]." This was tendered by defendant during his cross-examination of Elaine Johnson. In this letter to defendant, Elaine Johnson writes: "I did tell them [(investigators from the Federal Bureau of Investigation)] that I was sure of your innocence, [and] I do whatever to prove that." During redirect by the State's attorney, the following transpired:

"[STATE'S ATTORNEY]: Mrs. Johnson, in this first letter, D-1, you say in here that [defendant] is innocent. You're not talking about this case, are you? You're not talking about this case you're testifying right now about, are you? [ELAINE JOHNSON]: No. [STATE'S ATTORNEY]: You're talking about some case in Florida? [ELAINE JOHNSON]: Yes." Whereupon, defendant interposed his character objection. The State's attorney rejoined that he had "a right to explain it [where she says defendant is innocent]."

Our examination of the transcript in the case sub judice reveals that the State's attorney did not attempt to introduce the character evidence in question until after defendant's counsel, during cross-examination of one of the State's witnesses, had already introduced (without context) a written statement by that witness to the effect she was sure of defendant's "innocence." " 'The prosecution merely followed up on the issues injected by (the defendant). Since defendant first opened the door to this line of questioning, he cannot now complain. (Cits.)' *Smith v. State*, 258 Ga. 181, 182 (366 SE2d 763) (1988)." *Brown v. State*, 193 Ga. App. 26, 27 (4), 28 (386 SE2d 903).

4. Next, defendant contends the trial court erred in denying his motion for new trial because the prosecution purportedly made prejudicial statements about matters not in evidence. He argues that OCGA § 17-8-75 imposes on the trial court "an affirmative duty to rebuke counsel for the remarks and to instruct the jury to disregard the statement in order to prevent the appearance of the court's approval of the statement."

The record reveals that, during further redirect examination of Elaine Johnson by the State's attorney, the following transpired:

"[STATE'S ATTORNEY]: Exactly what case are you saying he's

innocent of, what investigation? [ELAINE JOHNSON]: I had to be referring to the Florida investigation. [STATE'S ATTORNEY]: Where the corrections officer turned up dead, is that the case you're talking about where the —. [DEFENSE COUNSEL]: [(Interposing)] Your Honor, that's leading and it's his own witness. THE COURT: No, sir. I sustain the objection as to being —. [STATE'S ATTORNEY]: [(Interposing)] Your Honor, it's on this letter I'm asking for an explanation of it. [DEFENSE COUNSEL]: Your Honor, that's one of the prosecutorial misconduct. THE COURT: I sustain the objection." Thereafter, defendant made no motion for mistrial and did not ask for any rebuke of the State's attorney.

In construing OCGA § 17-8-75, "our courts have held that after an objection to an improper question or statement is sustained, the [trial] court has no duty to rebuke counsel or give curative instructions absent a further request from the complaining party. *Phillips v. State*, 230 Ga. 444, 445 (1) (197 SE2d 720) (1973); see *Vernon v. State*, 152 Ga. App. 616, 617-618 (2) (263 SE2d 503) (1979)." *Garner v. State*, 199 Ga. App. 468 (2), 469 (2) (a) (405 SE2d 299). " 'A party can not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later.' *Johnson v. State*, 226 Ga. 511, 514 [(5)] (175 SE2d 840) (1970)." *Earnest v. State*, 262 Ga. 494 (1), 495 (422 SE2d 188). "Accordingly, given [defendant's] failure [in the case sub judice] to request further action, we find no reversible error in the trial court's failure to give curative instructions [or a rebuke, sua sponte,] after sustaining [defendant's] objection." *Garner v. State*, 199 Ga. App. 468 (2), 469 (2) (a), supra.

5. During closing argument, the State's attorney referred to defendant, saying: "That man's of no value to society. He's just committed an armed robbery. He's armed. He's dangerous." The trial court sustained defendant's objection to prosecutorial misconduct by directing the jury "to disregard that remark in its entirety, and I admonish you, Mr. [State's attorney], not to make such a remark." Thereafter, defendant made no motion for mistrial or raised any further objection to closing argument or exception to the trial court's curative measures. Nevertheless, in his fifth enumeration, defendant contends that the trial court's rebuke to the State's attorney and its instructions to the jury were insufficient corrective measures, again relying on OCGA § 17-8-75.

We find no error in the trial court's refusal to grant a mistrial, sua sponte, after sustaining an objection and giving curative instructions. "A sustained objection to an improper remark made by counsel, without a motion for mistrial, will not constitute grounds for reversal. *Grice v. State*, 224 Ga. 376 (162 SE2d 432) (1968); *Moore v. State*, 222 Ga. 748 (6) (152 SE2d 570) (1966). When an objection made to remarks made by counsel is sustained, and instructions to disregard

the statements are given, a ruling for mistrial is not demanded. *Gunter v. State*, 223 Ga. 290 (3) (154 SE2d 608) (1967)." *Lenear v. State*, 239 Ga. 617, 620 (12, 13), 621 (238 SE2d 407). Accord *Johnson v. State*, 158 Ga. App. 398 (2), 399 (280 SE2d 419).

6. In his sixth enumeration, defendant contends the trial court erred in failing to grant his motion for new trial on the special ground of ineffective assistance of counsel. We disagree.

"There exists no specified amount of time which a counsel must spend in preparation for trial; each situation must be judged upon its own circumstances and in light of its own degree of complexity. *Hand v. State*, 205 Ga. App. 467, 469 (2) (422 SE2d 316)." *Datz v. State*, 210 Ga. App. 517 (3), 518 (3) (a) (436 SE2d 506). " 'Generally, the burden is on the defendant claiming ineffectiveness of counsel to establish (1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.' . . . *Johnson v. State*, 214 Ga. App. 77 (1) (447 SE2d 74)." *Hudson v. State*, 218 Ga. App. 671 (1), 672 (462 SE2d 775). We have carefully reviewed defendant's specifications of alleged ineffective assistance in the case sub judice, arising out of counsel's alleged failure to conduct adequate investigation of the case and alleged failure to prepare for trial. "Based on an exhaustive examination of the record and transcript, we are convinced that the [defendant's] conviction resulted not from any deficiency in his legal representation but from the overwhelming evidence of his guilt[, including his custodial confession]." *Norris v. State*, 176 Ga. App. 164, 168 (8) (335 SE2d 611). Consequently, defendant has not shown any reasonable probability that, but for counsel's alleged unprofessional acts or omissions, the result of the proceeding would have been different. *Hayes v. State*, 263 Ga. 15, 16 (3) (426 SE2d 557). See also *Hite v. State*, 208 Ga. App. 267, 270 (2) (430 SE2d 125).

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

DECIDED MAY 14, 1996.

*Sherrod & Bernard, John W. Sherrod*, for appellant.
*David McDade, District Attorney, Bradley R. Malkin, Assistant District Attorney*, for appellee.