## A04A1132. WILKES v. THE STATE.
### (604 SE2d 601)

SMITH, Chief Judge.

Porter Wilkes was indicted by a Richmond County grand jury for the offense of burglary. A jury found him guilty, and judgment of conviction and sentence were entered on the jury's verdict. His motion for new trial was denied, and he appeals, raising four enumerations of error, none of which we find meritorious. We therefore affirm the judgment.

1. Wilkes first asserts that the trial court erred in denying his motion for new trial made on the ground that the evidence was insufficient to support the jury's verdict. We do not agree.

The evidence presented at trial showed that a break-in occurred at the office of a medical society management organization. When an employee arrived between 8:00 and 8:30 a.m., she found the back door unlocked. She observed a trail of blood on the floor inside the office, and it was apparent to her that doors, drawers, and cabinets had been opened. In the reception room there was "blood all over the place." After telephoning 911, she went to the front door entrance and noticed that a large picture window had been shattered and that shards of glass were "coming out at different angles." The front door was still locked. Missing from the office were three telephones, a large, old-fashioned radio, and a small radio.

On the same morning, Wilkes's parole officer, Bryan Redd, received a telephone call from Wilkes's sister, with whom Wilkes lived. She told Redd that Wilkes was at their residence asleep, that she could not awaken him, that "there was blood all over the place," and that Wilkes had cut off the electronic monitoring device on his ankle. Checking his records, Redd learned that the ankle bracelet was "open-strapped" at 8:48 a.m.[1]

Redd obtained an arrest warrant, and he and another parole officer, Scott Terry, traveled to Wilkes's residence. Wilkes's sister answered the door and allowed the parole officers to enter. As they crossed the threshold, they noticed blood on the door sill. They were

---

[1] Redd explained that the electronic device informs whoever is monitoring it regarding a parolee's movements. If a violation occurs, a "violation sheet" is transmitted to the parole officer by fax. He is also alerted by a pager, which he carries "24 hours a day, 7 days a week."

then shown to a bedroom, where Wilkes was lying on a cot, covered with a blanket. Blood covered the bedclothes. On a couch next to the cot, the parole officers found a bloody knife.

Wilkes was very difficult to rouse; he did not respond to verbal commands and seemed "half conscious, half not." He appeared "dazed, almost as though he were under the influence of something." Wilkes eventually responded when the officers shook him on the shoulder, and when he sat up the officers saw bloody open wounds on his wrists. Wilkes's bloody shoes were beside the bed, and Wilkes's sister informed them of a bloody shirt in the laundry hamper. The officers advised Wilkes that they had a warrant for his arrest. Although Wilkes was not cooperative, the officers eventually placed him in handcuffs and removed him from the room. They called paramedics because they were concerned about Wilkes's wounds.

While in the bedroom with Wilkes, the officers noticed two bloody bags. In the bags they found three telephones and two radios. These were later identified as the items stolen in the burglary, but at that point, the parole officers were unaware of the burglary. They learned about the burglary later, after the arrival of investigators from the Richmond County Sheriff's Department, who had apparently been alerted by the paramedics.

Wilkes's sister testified that when she awoke at 3:00 a.m. to get ready for work, Wilkes was in bed, but he left the house before she did. When she arrived home after work, between 8:00 and 8:30 a.m., he was back at home.

Wilkes points out that no eyewitness testified to the burglary or to his presence at the crime scene, no legible fingerprints were obtained from the scene, and the State did no testing of the blood found there or at his residence. He contends, therefore, that the only evidence against him was his unexplained possession of the stolen items and the fact that he was bleeding. According to Wilkes, it was just as reasonable for a jury to assume that he cut himself with the bloody knife found near his cot as to assume that he did so breaking the window glass at the burglarized office. We do not agree.

"To support a conviction, circumstantial evidence must exclude every reasonable hypothesis except the guilt of the accused, not remove every possibility of the defendant's innocence." (Citations and footnote omitted.) *Harris v. State*, 263 Ga. App. 866, 868 (589 SE2d 631) (2003). The evidence against Wilkes was compelling: he was gone from his home when the burglary took place and had possession of the stolen items shortly after the burglary, which he could not explain. He was bleeding badly from cuts on his hands and a "gash" on his chest. Bloody shoes and a bloody shirt were found at his home. Even if it were reasonable to assume that Wilkes stabbed himself in the chest and hands, a bloody trail at Wilkes's home led from the front

door to his bed, making it unlikely that he cut himself with the knife near his bed. The evidence presented excludes every *reasonable* hypothesis except Wilkes's guilt, and it was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to authorize the jury to find him guilty.

2. Wilkes maintains that the trial court erred in denying his motion to suppress the stolen items found in his room.

(a) He first argues that because he and his sister own the house jointly, his sister had no authority to permit a search of his room without his consent. Contrary to the State's assertion, sworn testimony was presented regarding the joint ownership of Wilkes's residence. Wilkes's sister testified that she and her brother owned the house. But we cannot agree with Wilkes's argument that his sister did not have authority to consent to the search. Under both Georgia and federal law,

> the consent of one who possesses common authority over premises or effects is valid as against the absent nonconsenting person with whom that authority is shared. This is so because it is *reasonable* to expect that a co-habitant with the authority to give such consent might, in fact, exercise that authority.

(Citations, punctuation and footnotes omitted.) *Randolph v. State*, 264 Ga. App. 396, 397 (1) (590 SE2d 834) (2003). See also *United States v. Matlock*, 415 U. S. 164, 170 (94 SC 988, 39 LE2d 242) (1974). Wilkes was barely conscious and unable to give or withhold consent, rendering him the functional equivalent of "being absent." We therefore conclude that this principle must apply here as well.

(b) Wilkes also argues that the parole officers had no probable cause to search his room or his bags. Under OCGA § 17-5-1, a peace officer may search an arrestee and the area within the arrestee's immediate presence under one of four circumstances, including discovering or seizing the fruits of the crime for which the person was arrested or discovering or seizing anything that may have been used in the commission of that crime. Wilkes correctly points out that the warrant for his arrest was issued for a parole violation — removing his ankle monitor — and not for the burglary. He argues that the items in the bloody bags were not pertinent to the parole violation, but were "fruits" of the burglary.

But the bloody bags were very much relevant to the parole violation; Wilkes obviously cut off his ankle bracelet so that he could leave the house to commit the burglary.

Furthermore, under the inevitable discovery doctrine, if the State shows by a preponderance of the evidence that illegally obtained evidence would have been discovered inevitably by lawful means, the evidence is admissible. *State v. Rocco,* 255 Ga. App. 565, 566 (566 SE2d 365) (2002). The information the sheriff's department received prompting its arrival at Wilkes's home was not illegally obtained, and the investigators would have discovered the bloody bags and their contents once they arrived on the scene. The inevitable discovery doctrine therefore applies as well. The warrantless search was not unlawful, and the trial court did not err in denying Wilkes's motion to suppress on this ground.

3. Wilkes contends that the trial court abused its discretion in allowing the parole officers to testify about the ankle monitor, its removal, and the reason they were in his home. He argues that this information was highly prejudicial, because it permitted the State to place his character in issue.[2] We find no merit in this argument.

It was not important or relevant for the State to present evidence of the nature of Wilkes's prior crime, and no testimony referred to the reason Wilkes was on parole. But because parole officers were the first responders here, their testimony was a necessary part of the State's case. Law enforcement officers were able to connect two seemingly unrelated scenes only because of the telling circumstantial evidence found at both scenes. To enable the jury to piece together the same circumstantial evidence, it was crucial that it hear about the phone call from Wilkes's sister to the parole officers. This evidence informed the jury of the reason parole officers were present at Wilkes's residence, laying a foundation for their testimony regarding their observations at the residence as to Wilkes's condition, his wounds, and his bloody clothing. Evidence probative for another permitted purpose is admissible, even though it may incidentally place the defendant's character in evidence. *Andrews v. State,* 235 Ga. App. 858, 859 (510 SE2d 841) (1998). "What is forbidden is the introduction by the state in the first instance of evidence whose *sole* relevance to the crime charged is that it tends to show that the defendant has bad character." (Citation and punctuation omitted.) Id. Moreover, the fact that the witnesses were parole officers alone would have informed the jury that Wilkes had been convicted of some prior crime. We find no basis for reversal on this ground.

4. In his final enumeration of error, Wilkes asserts that his trial counsel was ineffective. In determining whether a claim of ineffective

---

[2] At the same time, according to Wilkes, this was not probative of the burglary because he could have committed the burglary whether or not he was wearing the monitor.

assistance of counsel is valid, we apply the two-prong test in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To prevail, a "defendant must show that counsel's performance was deficient and that the deficiency so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [Cits.]" *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003). A trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed unless it is clearly erroneous. *Wilkes v. State*, 221 Ga. App. 390, 395 (6) (471 SE2d 332) (1996). Both prongs of the *Strickland* test must be satisfied. *Brown v. State*, 225 Ga. App. 49, 51 (1) (b) (483 SE2d 318) (1997). "We need not address both prongs of this test if the showing on one prong is insufficient. [Cit.]" Id.

To show that his trial counsel was deficient, Wilkes asserts that trial counsel met with him only once, was not adequately prepared to argue the motion to suppress competently, was not adequately prepared for trial, and did not object to the introduction of evidence that violated discovery rules.

We note that Wilkes was representing himself until 28 days before trial and accepted appointed counsel only when the trial judge recommended it. If any of Wilkes's allegations are true, they may have been caused by the shortness of time between counsel's appointment and the trial. We need not address the specifics of whether trial counsel was ineffective, however, because Wilkes has shown nothing in support of the second prong of the *Strickland* test.

Wilkes argues that had trial counsel argued the motion to suppress competently it would have been granted, and the outcome of the trial would have been different because the stolen items and bloody clothing would have been suppressed. We do not agree. As we decided in Division 2, the evidence collected by the parole officers was not obtained illegally, and Wilkes has shown no valid reason for its suppression.

Similarly, Wilkes has not shown how further preparation for trial would have changed the outcome. "There exists no specified amount of time which a counsel must spend in preparation for trial; each situation must be judged upon its own circumstances and in light of its own degree of complexity." (Citations and punctuation omitted.) *Wilkes*, supra, 221 Ga. App. at 395 (6).

Finally, Wilkes makes the vague claim that the State violated discovery rules. He does not, however, assert what rules were violated or what conduct violated them. "It is not this Court's role to cull the record on a party's behalf." (Citation and punctuation omitted.) *Bishop v. State*, 266 Ga. App. 129, 133 (4) (596 SE2d 674) (2004). As a result, we are unable to make an independent determination regarding the harmfulness of the alleged violation.

Because Wilkes has not satisfied the second prong of the *Strickland* test, we must affirm the trial court's ruling that he was afforded effective representation by trial counsel.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 10, 2004.

*Ellis R. Garnett*, for appellant.

*Daniel J. Craig*, District Attorney, *Charles R. Sheppard*, Assistant District Attorney, for appellee.