## A08A2046. POTTS v. THE STATE.

(674 SE2d 109)

DOYLE, Judge.

Following a jury trial, Ricky Potts was convicted of homicide by vehicle,[1] serious injury by vehicle,[2] hit and run,[3] and reckless driving.[4] He now appeals, contending that the trial court erred by (1) failing to grant him a continuance to locate a witness, (2) improperly instructing the jury as to the presumption of innocence, (3) failing to exclude biased jurors, (4) admitting improper character testimony, and (5) refusing to admit evidence that the victim was not wearing a seatbelt. Discerning no reversible error, we affirm.

Construed in favor of the verdict,[5] the evidence shows that after Potts left work at a restaurant, he picked up Melanie Johnson and Kelvin Barnes in his car at approximately 11:30 p.m. Potts already had a cup full of liquor in the car with him, and he drove with Johnson and Barnes to a liquor store, where Potts bought more liquor. Potts then drove his friends to his house, where the three consumed liquor and smoked marijuana. At approximately 4:00 a.m., insisting that he needed to take Johnson and Barnes home so he could work the next day, Potts drove them through heavy rain toward Johnson's residence. Despite Barnes's protests, Potts drove through more than one red light without stopping. As Potts began a subsequent right turn without stopping at a red light (failing to heed a "no turn on red" sign), a MARTA officer responding to a larceny-in-progress call rapidly approached from the cross street. The officer swerved to avoid Potts, hydroplaned, and crashed violently into a concrete pillar. Potts refused to stop at the scene, and the officer, who was later taken to the hospital, died from his injuries 17 days later.

Potts was arrested and tried by a jury on an eight-count indictment stemming from the event. Following his conviction on four counts and his unsuccessful motion for new trial, Potts filed this appeal.

1. Potts contends that the trial court erred by denying his motion for a continuance on the first day of trial so that he could locate a witness. Because under the circumstances the trial court was within its discretion to deny the motion, we disagree.

"The grant or denial of a continuance will not be disturbed on appeal absent a showing of an abuse of discretion."[6] "In all applica-

---

[1] OCGA § 40-6-393.

[2] OCGA § 40-6-394.

[3] OCGA § 40-6-270.

[4] OCGA § 40-6-390.

[5] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[6] *Kuykendoll v. State*, 278 Ga. App. 369, 370 (2) (629 SE2d 32) (2006). See *Martin v. State*,

tions for continuances upon the ground of the absence of a witness, it shall be shown to the court that the witness is absent . . . [and] that he has been subpoenaed. . . ." OCGA § 17-8-25. Here, on the first day of trial, Potts asked for a continuance to the next available criminal trial calendar because he had been unable to locate or subpoena a homeless man who witnessed the collision. At an earlier pre-trial hearing, the witness had provided sworn and transcribed testimony to the effect that Potts had paused and not yet entered the intersection when the officer swerved to avoid him. However, despite five days of searching, Potts was unable to relocate the witness on the day of trial. The trial court instructed both Potts and the State to continue looking for the witness during the trial and indicated that he would allow Potts to introduce the hearing transcript in the event that the witness could not be located. Six days later, with the witness still absent, the trial court again denied Potts's renewed motion for a continuance, and the transcript was read into the record as part of the defense's evidence. Two days after that, during the jury's deliberation, Potts was able to locate the witness and proffered the same exculpatory testimony from the live witness that had been read into evidence earlier. Later that day, the jury returned its verdict.

Under the circumstances presented, we see no abuse of discretion. After Potts's initial request for a continuance was denied, he had six additional days to locate the witness (a total of eleven days of searching for the witness), and he was ultimately allowed to read a transcript of the exculpatory testimony into the record. Both the State and Potts were present during the prior testimony and were able to examine the witness at that time. Further, at no time had the witness been subpoenaed. "[W]hen applicants request a continuance based upon missing witnesses, where the witness has not been subpoenaed and where other statutory requirements have not been met, it is not an abuse of discretion to refuse a postponement of the hearing in order to subpoena these persons."[7] Therefore, this enumeration is without merit.[8]

2. Potts next contends that the trial court erred in improperly instructing the jury as to the presumption of innocence. We discern no reversible error.

During voir dire, while the attorneys examined the jury pool for bias, the trial court stated as follows:

---

268 Ga. 682, 683 (2) (492 SE2d 225) (1997).

[7] *Kuykendoll v. State*, 278 Ga. App. at 370-371 (2).

[8] See *Eady v. State*, 129 Ga. App. 656 (1) (200 SE2d 767) (1973) (no error in denying continuance "based upon the absence of a material witness for whom a subpoena was not issued by defendant until the morning the trial was to begin and who had not been served therewith at the time the motion was made").

[T]he law requires you as a juror to presume that person innocent until you hear evidence sufficient to satisfy your mind that that person is guilty. . . . [T]he person still comes to court with a presumption of innocence in their favor[,] and if the juror cannot give the person the presumption, then obviously they're not a fair juror. . . . [I]f the state charges you, then they have the responsibility and the burden of proving you guilty. The defendant doesn't have any responsibility.

Later, during the questioning of specific jurors, the trial court attempted to explain the concept of bias as follows:

What the law says is you are to presume the defendant to be innocent. It does not require you to think that he is innocent. You have not heard any evidence, so you don't know. But to sit on the jury, it requires you to take the position to say, I don't know, show me. And until you show me[,] I will [give] him the benefit of the presumption. . . . The court does not require you to think that he is innocent, it requires you to take the position and presume that he's innocent until you hear evidence that convinces you otherwise. . . . I didn't want everybody . . . thinking he's innocent . . . that's just as bad as thinking he's guilty. [If you do that] you've already made a supposition, you've already become biased about it one way or the other. So the fair and impartial mind, you need to sit in the middle and take the position that I don't know. If there's something that persuades you one way or the other, then you'[re] not fair and impartial, okay? . . . Bias for or against is bias. You have no evidence and you should not be biased either for or against the defendant.

Potts objected to this characterization of bias, and the trial court overruled the objection and voir dire continued.

Taken alone, portions of the colloquy are inartful, but taken in context with the rest of the trial court's voir dire instruction, we discern no reversible error based on this isolated incident. During voir dire, the trial court made other correct references to and explanations of both the State's burden of proof and the presumption of innocence, and this single explanation did not so confuse the jury as to unduly prejudice Potts. The juror whom the trial court addressed during the colloquy explained, "Do I presume him to be innocent, yes." Furthermore, during the jury charge, the trial court fully and correctly instructed the jury as to the State's burden and the presumption of

innocence. "It is axiomatic that the jury charge is to be read as a whole, and that a single lapsus linguae, preceded and followed by correct instructions, will not vitiate a thorough and otherwise correct instruction."[9] "We do not evaluate jury charges in isolation, but rather consider them as a whole to determine whether there is a reasonable likelihood the jury improperly applied a challenged instruction."[10] Under the circumstances before us, we discern no reversible error.[11]

3. Potts next contends that the trial court abused its discretion in failing to strike for cause three jurors based on their answers during voir dire. We disagree.

"A prospective juror should be dismissed when he or she has formed an opinion on the guilt or innocence of the accused which is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence."[12] "[W]hether to strike a potential juror for cause is a matter for the trial court's sound discretion. As the trial court's conclusion regarding bias is based in part on demeanor and credibility, which are peculiarly within the trial court's province, those findings are to be given deference."[13]

(a) Potts first challenges a juror who initially doubted her own impartiality based on the involvement of alcohol and the allegation that Potts left the scene of an accident. However, during further questioning, the juror was rehabilitated and stated that she would try to be fair and impartial, and when asked if there was "anything that causes you any hesitation as to being fair and impartial," she answered, "no." Under these circumstances, in light of the juror's expressed intention to be impartial, we discern no abuse of discretion.[14]

(b) Potts next challenges a juror who stated that she had negative personal experiences with drinking and driving and that "there's no excuse for drinking and driving." However, the juror explained that her initial doubt was merely an irrational reaction based on her own experiences and that she could serve as an impartial juror after listening to the court's instructions. Based on

---

[9] (Punctuation omitted.) *Davenport v. State*, 283 Ga. 171, 173 (4) (656 SE2d 844) (2008).

[10] *Salahuddin v. State*, 277 Ga. 561, 564 (3) (592 SE2d 410) (2004).

[11] See *Carey v. State*, 263 Ga. App. 109, 112 (4) (588 SE2d 434) (2003).

[12] (Punctuation omitted.) *McCoy v. State*, 285 Ga. App. 246, 248 (2) (645 SE2d 728) (2007).

[13] (Citations omitted.) *Robles v. State*, 277 Ga. 415, 419 (4) (589 SE2d 566) (2003).

[14] See *Anderson v. State*, 276 Ga. 389, 390 (2) (578 SE2d 890) (2003) ("a trial court is not required to strike for cause a potential juror who simply questions his or her impartiality or expresses reservations about his or her ability to set aside personal experiences") (citations and punctuation omitted).

this rehabilitation and the trial court's observations of the juror's self-assessment, we discern no abuse of discretion.[15]

(c) Potts's final challenge lacks support by appropriate citation to the record. Absent clear references to the transcript and the precise colloquy supporting an enumeration on appeal, this Court will not cull the record on a party's behalf.[16] Accordingly, with respect to his third juror challenge, Potts has presented this Court with nothing to review. Furthermore, it appears from this Court's own review of the transcript that to the extent that the juror initially expressed potential bias, the juror was properly rehabilitated and the trial court did not abuse its discretion in seating the juror.[17]

4. Potts also contends that the trial court abused its discretion in allowing Barnes (Potts's friend and passenger) to testify that Potts "always ran red lights," because it was improper character evidence. We discern no reversible error.

Generally, "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." OCGA § 24-2-2. "Whether to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue."[18]

Here, prior to trial, during a hearing on multiple defense motions, the judge presiding over the hearing considered Potts's motion in limine to exclude any improper character evidence. The State agreed not to introduce any character evidence, and the hearing continued. At trial, a different trial judge presided, and the following colloquy ensued during the State's direct examination of Barnes (Potts's friend and passenger):

Q: Now, when the defendant made that right on red at [the intersection where the officer crashed], did you say anything to [the defendant]?
A: Yes, I told him not to run the red light.
Q: And why did you say that?
A: Because he always ran red lights.

When asked what he told police, Barnes testified that he "told

---

[15] See *Garrett v. State*, 280 Ga. 30, 31 (2) (622 SE2d 323) (2005).

[16] See Court of Appeals Rule 25 (c) (2) (i); *Wilkes v. State*, 269 Ga. App. 532, 536 (4) (604 SE2d 601) (2004) ("[i]t is not this Court's role to cull the record on a party's behalf") (citations and punctuation omitted).

[17] See *Anderson*, 276 Ga. at 390 (2).

[18] *Edge v. State*, 275 Ga. 311, 313 (3) (567 SE2d 1) (2002).

[police] that [Potts] had run a red light . . . he always runs red lights." Potts objected unsuccessfully, and he now appeals, arguing that this was improper character evidence.

The trial court admitted the evidence, in part, on the theory that it was part of the res gestae of the moments described by the witness.[19] Pretermitting whether this was correct, we note that the evidence was overwhelming and uncontroverted (i) that Potts had been drinking alcohol and smoking marijuana before he began driving the car, (ii) that he actually did run several red lights that morning, (iii) that Potts unlawfully turned right on red where the collision occurred, (iv) that Potts's rapid approach to the red-light intersection caused the officer to react as he approached from the cross street, resulting in the officer's hydroplaning and colliding into the concrete pillar, and (v) that Potts left the scene of the crash.

In light of this overwhelming evidence of Potts's guilt, it is highly probable that the challenged evidence did not contribute to the verdict.[20]

> [H]arm as well as error must be shown to authorize a reversal by this court. When a plaintiff in error brings a case here, he must show error which has hurt him. This court is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party.[21]

Therefore, based on the circumstances of this case, admission of the challenged evidence did not give rise to reversible error.[22]

5. Finally, Potts contends that the trial court erred in refusing to admit evidence that the officer was not wearing a seatbelt as a defense to the charge of serious injury by vehicle. We disagree.

"[T]he admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion."[23] Here, to prove that Potts was guilty of serious injury by vehicle, the State had to show that Potts

---

[19] See, e.g., *Roberts v. State*, 221 Ga. App. 196, 198 (2) (471 SE2d 27) (1996).

[20] See *Alvarado v. State*, 257 Ga. App. 746, 748 (2) (572 SE2d 18) (2002) (overwhelming evidence of guilt led appeals court to conclude that "it is highly probable that [improper character evidence] did not contribute to the verdict").

[21] (Citations and punctuation omitted.) *Madison v. State*, 281 Ga. 640, 642 (2) (b) (641 SE2d 789) (2007).

[22] See *Walker v. State*, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007); *Johnson v. State*, 238 Ga. 59, 61-62 (230 SE2d 869) (1976).

[23] *O'Neal v. State*, 254 Ga. 1, 3 (3) (325 SE2d 759) (1985).

without malice, [caused] bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, by seriously disfiguring his body or a member thereof, or by causing organic brain damage which renders the body or any member thereof useless through the violation of Code Section 40-6-390 [reckless driving] or 40-6-391 [driving under the influence]. . . .

OCGA § 40-6-394. The statute imposes no duty on the victim to prevent or mitigate injuries caused by a reckless or intoxicated driver, nor does Potts identify any authority for such a proposition. Therefore, we decline to do so here. Accordingly, the trial court did not abuse its discretion in refusing to admit evidence as to whether the officer, who was responding to the scene of an ongoing crime, was wearing his seatbelt.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 20, 2009.

*Deborah J. Poole*, for appellant.
*Paul L. Howard, Jr., District Attorney*, for appellee.