A09A0647. LOPEZ v. THE STATE.
(677 SE2d 776)

BLACKBURN, Presiding Judge.

Following a jury trial, Miguel Hidalgo Lopez was convicted on eight counts of aggravated assault,[1] two counts of aggravated battery,[2] one count of simple battery,[3] and one count of participation in criminal street gang activity.[4] He appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence and further arguing that his trial counsel rendered ineffective assistance and that the trial court committed plainly reversible error by improperly commenting on the evidence in violation of OCGA § 17-8-57. For the reasons set forth below, we affirm.

"On appeal from a criminal conviction, the evidence must be

---

construed in a light most favorable to the verdict, and [Lopez] no longer enjoys a presumption of innocence." (Punctuation omitted.) *Dennis v. State.*[5] In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia.*[6]

So viewed, the record shows that Lopez was a member of an Athens area criminal street gang known as Los Primos Surenos 13 ("Los Primos"). On January 24, 2004, Lopez and several other members of Los Primos were attending a birthday party, which was being held at a restaurant in downtown Athens. At some point in the early evening, three members of a rival street gang known as 18th Street, who had also been invited to the party, approached the entrance to the restaurant but were blocked from entering by two Los Primos members. Following a heated exchange of words, one Los Primos member threw a beer bottle, and a fight started, in which Lopez quickly joined. After less than a couple of minutes, the combatants fled upon learning that the police had been called.

In the late afternoon of January 30, 2004, two of the members of the 18th Street gang who had been involved in the fight outside the restaurant drove to the neighborhood where many Los Primos members were known to reside in an attempt to resolve the dispute and to ease rising tensions between the two gangs. However, upon their arrival, Los Primos members surrounded their car and began kicking it. As the two 18th Street members drove away, one Los Primos member fired a shotgun at them. Thereafter, the two 18th Street gang members returned to the neighborhood of duplexes where one of them, as well as several other 18th Street members, resided.

Later that night, members of the 18th Street gang, including the two who had earlier been chased from the Los Primos neighborhood, were gathered in front of their duplexes when they saw Lopez's Ford pickup truck and two other vehicles, with numerous occupants who they knew to be Los Primos members, approaching with their headlights turned off. One of the vehicles stopped near the corner while the other two, including Lopez's pickup truck, passed in front of the duplexes and then turned around in the cul-de-sac at the end of the street. As Lopez's pickup truck and the other vehicle passed in front of the duplexes again, one of the passengers started yelling curses and threats. Immediately thereafter, several Los Primos

[5] *Dennis v. State*, 294 Ga. App. 171 (669 SE2d 187) (2008).
[6] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

members in the vehicles, including Lopez, opened fire on the 18th Street members with semi-automatic pistols, rifles, and a shotgun. The 18th Street members in front of the duplexes ran or ducked for cover; however, two of them suffered bullet wounds to the arm before Lopez's pickup and the other two vehicles sped away. In addition, the bullets wounded two people in an adjoining duplex.

Lopez was later arrested and indicted on eight counts of aggravated assault related to the drive-by shooting, two counts of aggravated battery related to the wounding of the two people inside the adjoining duplex, one count of simple battery related to the fight outside of the downtown restaurant, and one count of participation in criminal street gang activity. He was tried and found guilty on all counts. Thereafter, Lopez filed a motion for new trial, which he amended after obtaining new counsel and which was denied after a hearing. This appeal followed.

1. Lopez contends that the evidence was insufficient to support his convictions of aggravated assault and aggravated battery, which were related to the drive-by shooting. We disagree.

Lopez was charged with four counts of aggravated assault under OCGA § 16-5-21 (a) (2) and four counts under subsection (a) (3). OCGA § 16-5-21 (a) (2) provides: "A person commits the offense of aggravated assault when he or she assaults[ w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." Under subsection (a) (3), "[a] person commits the offense of aggravated assault when he or she assaults[ a] person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons." OCGA § 16-5-24 (a) provides: "A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). A person is concerned in the commission of a crime if he directly commits the crime or intentionally aids or abets in the commission of the crime. OCGA § 16-2-20 (b) (1), (3).

Here, the evidence showed that Lopez and several other members of Los Primos drove into the neighborhood where many of the 18th Street gang members resided and opened fire on a crowd of 18th Street members that were gathered outside some duplexes. The evidence also showed that during the course of the drive-by shooting, the bullets wounded two people inside a duplex adjoining an 18th Street member's duplex. Thus, there was sufficient evidence to allow

the jury to find that Lopez participated in the drive-by shooting, and therefore to find him guilty of the charges of aggravated assault and aggravated battery beyond a reasonable doubt. See *Adkins v. State*[7] (evidence that defendant participated in a drive-by shooting was sufficient to support aggravated assault conviction); *Ford v. State*[8] (evidence that defendant drove the vehicle involved in a drive-by shooting was sufficient to support convictions as a party to aggravated assault); *Davenport v. State*[9] (evidence that defendant participated in drive-by shooting was sufficient to support convictions of aggravated assault and aggravated battery); *Warren v. State*[10] (evidence that defendant was in the vehicle involved in a drive-by shooting was sufficient to support his aggravated assault conviction despite lack of evidence as to whether he actually fired the shots).

Nevertheless, Lopez argues that witness testimony as to whether he was present during the shooting was contradictory and that the testimony of his two alibi witnesses contradicted the eyewitness testimony and showed that he was not involved. Citing the testimony of the defense expert on eyewitness identification, he further argues that the chaos of the shooting rendered testimony identifying him unreliable. These arguments are not persuasive. As previously noted, this Court does not weigh the credibility of witnesses. See *Dennis*, supra, 294 Ga. App. at 171. Any conflicts or inconsistencies in the evidence are for the jury to resolve, and the jury was not required to believe Lopez's alibi witnesses. *Tolbert v. State*.[11] Furthermore, "[i]t is well-settled that a jury is always free to reject expert opinion testimony and substitute their own knowledge and experience." (Punctuation omitted.) *Hathcock v. State*.[12] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict." *Reeves v. State*.[13] Here, the jury chose to disbelieve Lopez's alibi witnesses and to believe that of the eyewitnesses. Accordingly, we affirm Lopez's aggravated assault and aggravated battery convictions.

2. Lopez contends that the trial court erred in denying his motion for directed verdict of acquittal, arguing that the evidence was insufficient to support his conviction of simple battery. He further argues that had he been correctly acquitted of this charge,

---

[7] *Adkins v. State*, 279 Ga. 424, 425-426 (2) (614 SE2d 67) (2005).

[8] *Ford v. State*, 280 Ga. App. 580, 581 (634 SE2d 522) (2006).

[9] *Davenport v. State*, 255 Ga. App. 593, 594-595 (1) (565 SE2d 900) (2002).

[10] *Warren v. State*, 245 Ga. App. 768 (1) (a) (538 SE2d 840) (2000).

[11] *Tolbert v. State*, 282 Ga. 254, 256 (1) (647 SE2d 555) (2007).

[12] *Hathcock v. State*, 214 Ga. App. 188, 190 (3) (447 SE2d 104) (1994).

[13] *Reeves v. State*, 288 Ga. App. 544 (654 SE2d 449) (2007).

the State would not have been able to establish a pattern of criminal gang activity, which was necessary to support his conviction on the charge of participation in criminal street gang activity. We disagree.

"On appeal, the standard of review for denial of a motion for directed verdict is the same as that for determining the sufficiency of the evidence to support a conviction." (Punctuation omitted.) *Chambers v. State*.[14] "A person commits the offense of simple battery when he or she . . . [i]ntentionally makes physical contact of an insulting or provoking nature with the person of another. . . ." OCGA § 16-5-23 (a) (1).

Here, two witnesses testified that Lopez fought with at least one of the 18th Street gang members outside of the downtown restaurant. In addition, another witness testified that this gang member had scratches and bruises on his face as a result of the fight. Thus, the evidence was sufficient to allow the jury to find Lopez guilty of simple battery beyond a reasonable doubt. See *Lawson v. State*;[15] *Hammonds v. State*.[16]

The evidence was also sufficient to support Lopez's conviction of participation in criminal street gang activity. Former OCGA § 16-15-4 (a) (2005) provided: "It shall be unlawful for any person employed or associated with a criminal street gang to conduct or participate in such criminal street gang through a pattern of criminal gang activity." Former OCGA § 16-15-3 (1) (2005) defined a criminal street gang as

> any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in a pattern of criminal gang activity as defined in paragraph (2) of this Code section. The existence of such organization, association, or group of individuals associated in fact may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics.

Former OCGA § 16-15-3 (2) (2005) defined pattern of criminal gang activity as

> the commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit at least two of the [referenced] offenses,

---

[14] *Chambers v. State*, 288 Ga. App. 550 (654 SE2d 451) (2007).
[15] *Lawson v. State*, 275 Ga. App. 334, 335-336 (1) (620 SE2d 600) (2005).
[16] *Hammonds v. State*, 263 Ga. App. 5, 6 (1) (587 SE2d 161) (2003).

provided that at least one of these offenses occurred after July 1, 1998, and the last of such offenses occurred within three years, excluding any periods of imprisonment, of prior criminal gang activity.

Included in the referenced offenses was "[a]ny offense defined as racketeering activity by Code Section 16-14-3." OCGA § 16-15-3 (2) (A) (2005). Under OCGA § 16-14-3 (9) (A) (v), aggravated assault, aggravated battery, and simple battery are offenses included in the definition of racketeering activity.

In this matter, witness testimony and numerous photographic exhibits showed that Lopez was a member of Los Primos. Testimony from a former Los Primos member showed that Los Primos was an established criminal street gang in the Athens area. Additionally, the evidence showed that Lopez committed the offense of simple battery and, less than a week later, committed the offenses of aggravated assault and aggravated battery. In light of this evidence, the State established that he had engaged in a pattern of criminal gang activity. Accordingly, the trial court did not err in denying Lopez's motion for directed verdict of acquittal.

3. Lopez contends that the trial court erred in denying his claim of ineffective assistance of counsel, arguing that his trial counsel performed deficiently in failing to object to the testimony in which the former Los Primos gang member discussed the dangers of testifying about gang activities and against other gang members. We disagree.

> To establish ineffective assistance of counsel under *Strickland v. Washington*,[17] a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.

*Kurtz v. State*.[18] "Making that showing requires that [Lopez] rebut the strong presumption that [his] lawyer's conduct falls within the wide range of reasonable professional assistance." *Simpson v. State*.[19] "As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective

---

[17] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).
[18] *Kurtz v. State*, 287 Ga. App. 823, 825 (652 SE2d 858) (2007).
[19] *Simpson v. State*, 278 Ga. 336, 337 (2) (602 SE2d 617) (2004).

assistance of counsel." (Punctuation omitted.) *Beck v. State*.[20] "We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous." *Kurtz*, supra, 287 Ga. App. at 825.

At trial, the State proffered the testimony of a former Los Primos member as evidence of the gang's existence in the Athens area. During his testimony, the former gang member stated that he did not want to testify as it could be viewed as snitching. Lopez contends that his trial counsel performed deficiently by not objecting to this testimony, arguing that it impermissibly implied that he had threatened the witness. However, Lopez did not have his trial counsel testify during the hearing on his motion for new trial. "The decision not to object is therefore presumed to be a strategic one that does not amount to ineffective assistance." (Punctuation omitted.) *Lupoe v. State*.[21] Accordingly, the trial court did not err in rejecting Lopez's contention that his trial counsel rendered ineffective assistance.

4. Lopez further contends that the trial court committed reversible error by impermissibly commenting on the evidence. We disagree.

OCGA § 17-8-57 provides:

> It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

However,

> [a] trial judge may propound questions to a witness to develop the truth of the case, to clarify testimony, to comment on pertinent evidentiary rules and to exercise its discretion when controlling the conduct of counsel or witnesses in order to enforce its duty to ensure a fair trial to both sides.

*Dickens v. State*.[22] Where a trial judge is alleged to have made a

---

[20] *Beck v. State*, 292 Ga. App. 472, 474 (2) (a) (665 SE2d 701) (2008).

[21] *Lupoe v. State*, 284 Ga. 576, 578 (3) (a) (669 SE2d 133) (2008).

[22] *Dickens v. State*, 280 Ga. 320, 324 (3) (627 SE2d 587) (2006).

prejudicial remark in violation of OCGA § 17-8-57, "absent plain error, an objection or motion for mistrial must be made in order to preserve the issue for appeal." *Lockaby v. State*.[23]

Here, after the State had concluded its direct examination of one of the persons who was shot during the drive-by shooting, the trial court asked the victim if he had sustained a scar as a result of being wounded. When the victim responded that he had, the trial court asked to see the scar and then asked the victim to show his scar to the jury. Lopez's trial counsel did not object to the trial court's questions; thus, absent plain error, the issue was not preserved for appeal. See *Lockaby*, supra, 265 Ga. App. at 528 (1).

Citing *Paul v. State*,[24] Lopez argues that the trial court's remarks were so egregious that they constituted plain error, requiring reversal. However, *Paul v. State* is distinguishable. In that case, our Supreme Court found a violation of OCGA § 17-8-57 based on the fact that the trial court took on a prosecutorial role and intimated his opinion on several occasions as to the credibility of witnesses and the guilt of the defendant. Id. at 846 (1). Although Lopez correctly notes that the trial court in *Paul* also directed a victim to show his scars to the jury, our Supreme Court only cited that remark as improper because the trial court discredited the defendant when he similarly attempted to show his own physical disability. Id.

In contrast, after reviewing the colloquy in this matter, we conclude that the trial court's questions and directions to the shooting victim did not amount to an expression of opinion as to what had been proven or as to Lopez's guilt or innocence. Rather, because the trial court's questions were entirely objective, did not suggest a particular answer to the witness, and related to the aggravated battery against the witness, we conclude that the trial court's questions fell within its discretion to ask questions to develop the truth of the case. See *Dickens*, supra, 280 Ga. at 324 (3); *Curry v. State*.[25] Accordingly, we discern no "plain error."

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED APRIL 23, 2009.

*Thomas J. Killeen*, for appellant.

---

[23] *Lockaby v. State*, 265 Ga. App. 527, 528 (1) (594 SE2d 729) (2004).

[24] *Paul v. State*, 272 Ga. 845, 848 (1) (537 SE2d 58) (2000).

[25] *Curry v. State*, 283 Ga. 99, 102 (4) (657 SE2d 218) (2008).

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney*, for appellee.