## A09A2197. CRAWFORD v. THE STATE.
(688 SE2d 409)

BLACKBURN, Presiding Judge.

Following a jury trial, Jason Crawford was convicted on a single count each of criminal attempt to commit armed robbery,[1] aggravated assault,[2] and possession of a firearm during the commission of a crime.[3] Crawford now appeals from the denial of his motion for a new trial, asserting that the trial court erred in: (1) denying his motion for a directed verdict of acquittal; and (2) admitting a witness's statements as res gestae. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict, *Drammeh v.*

---

[1] OCGA §§ 16-8-41 (a); 16-4-1.
[2] OCGA § 16-5-21 (a) (2).
[3] OCGA § 16-11-106 (b) (1).

*State*,[4] the evidence shows that the victim in this case was a drug dealer with whom Crawford was acquainted. On December 1, 2004, Crawford telephoned the victim and told him he wanted to purchase some cocaine, and the two men arranged to meet at a local convenience store. Crawford had a friend drop him off at the convenience store, where he waited for the victim, who was driven there by his girlfriend. The two men talked outside of the convenience store and, desiring a more discrete location, the victim told Crawford they could continue their discussion at a car wash located directly behind the store. The victim then had his girlfriend drive him to the car wash, while Crawford walked to that location.

After arriving at the car wash, the victim directed his girlfriend to pull her car into one of the bays, and he exited the vehicle and began preparing to wash the same. Shortly thereafter, Crawford appeared, pulled out a gun, and attempted to rob the victim. When the victim began to run away, Crawford shot him three times. The victim's girlfriend then transported him to the hospital, and the incident was reported to the police.

The victim told police that Crawford had called him from a telephone number belonging to Antwan Williams, a mutual friend. Additionally, the victim and his girlfriend described their assailant and stated that he was wearing dark blue work clothes, specifically Dickies brand or Dickies-type work clothes. Police then interviewed Williams, who told police that Crawford had arrived at his house in the late afternoon or early evening on the day in question, asked for the victim's phone number, and then used Williams's phone to call the victim. Williams heard Crawford telling the victim that he wanted to purchase cocaine and then making arrangements to meet the victim. After Crawford finished his conversation with the victim, he showed Williams a gun and told him he planned to rob the victim. Approximately 30 to 45 minutes after Crawford left his house, Williams heard about the shooting and told his wife that he supposed Crawford had actually tried to rob the victim.

Police also interviewed the person who had driven Crawford to Williams's house that evening. According to this witness, Crawford had gone into Williams's house and used the telephone, and had then returned to the car and asked to be driven to the convenience store in question. This witness also confirmed that Crawford was wearing dark blue work clothes and white Nike tennis shoes.

Based on this evidence, police obtained a search warrant for Crawford's residence. There they recovered two dark blue Dickies brand work shirts (one of which contained Crawford's social security

---

[4] *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).

card), one pair of dark blue Dickies brand work pants (which Crawford was wearing), and a pair of white Nike Air Force tennis shoes. An expert from the State Crime Lab compared the tennis shoes taken from Crawford's residence with two footprints found at the crime scene, and testified that the shoes could have made the footprints, because they were similar in size and tread pattern.

After they arrested Crawford, police showed both the victim and his girlfriend separate photographic lineups, and each picked out Crawford as the victim's assailant. They confirmed this identification at trial.

Following his conviction, Crawford filed a motion for a new trial, which was denied. This appeal followed.

1. In his first enumeration of error, Crawford asserts that the trial court erred in denying his motion for a directed verdict at the close of the State's case. This claim is without merit.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard, we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In doing so, we neither weigh the evidence nor judge the credibility of the witnesses. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld

(Citations and punctuation omitted.) *Navarro v. State.*[5]

All of Crawford's arguments regarding the sufficiency of the evidence go to identity — i.e., he argues that the evidence failed to establish that he was the perpetrator of these crimes. These arguments, however, ignore the testimony of the victim and his girlfriend, who were eyewitnesses to the crimes. Their testimony, standing alone, was sufficient to establish Crawford's identity as the perpetrator. See *Hall v. State*[6] ("the victim's testimony on this issue was sufficient to sustain the conviction, and the jury was authorized to resolve the evidentiary conflicts in the victim's favor") (punctuation omitted); *Culver v. State.*[7] See also OCGA § 24-4-8 ("[t]he testimony of a single witness is generally sufficient to establish a fact"). Moreover, despite Crawford's arguments to the contrary, the fact that he

---

[5] *Navarro v. State*, 293 Ga. App. 329, 329 (667 SE2d 125) (2008).
[6] *Hall v. State*, 292 Ga. App. 544, 547 (1) (664 SE2d 882) (2008).
[7] *Culver v. State*, 290 Ga. App. 321, 322 (659 SE2d 390) (2008).

offered alibi witnesses did not entitle him to a directed verdict. "[I]t is the jury that determines the credibility of the witnesses, and it was authorized to disbelieve the alibi testimony." *Bryant v. State.*[8] "Here, the jury chose to disbelieve [the testimony of Crawford's] alibi witnesses and to believe that of the eyewitnesses." *Lopez v. State.*[9]

Crawford attempts to avoid this result by arguing that the eyewitnesses' identification of him was unreliable, for a myriad of reasons. These arguments, however, all go to the credibility of the witnesses and the weight to be given their testimony. See *Bond v. State*;[10] *Feldman v. State.*[11] "[A]s stated previously, this Court merely determines evidence sufficiency; we do not weigh the evidence or assess the credibility of the witnesses." *Singleton v. State.*[12] Thus, arguments that go "to the weight and credibility that the jury wished to assign to the [S]tate's otherwise sufficient evidence . . . present[ ] no basis for reversal." (Punctuation omitted.) *Simmons v. State.*[13]

The evidence, as set forth above, was more than sufficient to show that Crawford committed the crimes with which he was charged. See OCGA §§ 16-4-1;[14] 16-5-21 (a) (2);[15] 16-11-106 (b) (1).[16] Accordingly, because "our review shows the evidence presented was sufficient to enable the jury to find each element of the crime[s] charged beyond a reasonable doubt, we will not disturb the verdict." *Razinha v. State.*[17]

2. As noted above, Williams and the victim testified that, on the night of the shooting, after Crawford spoke with the victim on the telephone, Crawford showed Williams a gun and stated that he planned to rob the victim. Williams further testified that, approximately 30 to 45 minutes later, he heard about the shooting. The prosecutor then asked: "When you heard about the shooting, what

---

[8] *Bryant v. State*, 282 Ga. 631, 633 (1) (651 SE2d 718) (2007).

[9] *Lopez v. State*, 297 Ga. App. 618, 621 (1) (677 SE2d 776) (2009).

[10] *Bond v. State*, 283 Ga. App. 620, 621 (1) (642 SE2d 223) (2007).

[11] *Feldman v. State*, 282 Ga. App. 390, 391 (638 SE2d 822) (2006).

[12] *Singleton v. State*, 259 Ga. App. 184, 185 (1) (577 SE2d 6) (2003).

[13] *Simmons v. State*, 285 Ga. App. 129, 130 (645 SE2d 622) (2007).

[14] A person commits criminal attempt to commit armed robbery where, acting with the intent to commit an armed robbery, he performs an act "which constitutes a substantial step toward the commission of [armed robbery]." OCGA § 16-4-1. "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon. . . ." OCGA § 16-8-41 (a).

[15] "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon. . . ."

[16] A person is guilty of possession of a firearm during the commission of a crime, where, at the time he commits a crime against a person, he or she has "on or within arm's reach of his or her person a firearm. . . ."

[17] *Razinha v. State*, 273 Ga. App. 583, 584 (615 SE2d 649) (2005).

YALE LAW LIBRARY

did you do?" Williams responded: "I told my wife that [Crawford was] for real. She was like what you mean? And I told her what [Crawford] told me [earlier]." The trial court overruled defense counsel's objection to this testimony, finding that it was admissible as an excited utterance. On appeal, Crawford argues that this ruling was error, and that this testimony should have been excluded. As best we can tell, Crawford's argument is that Williams should not have been allowed to testify as to the inference he drew from Crawford's earlier statements to him about robbing the victim — i.e., he should not have been allowed to testify that, upon hearing about the attempted robbery of the victim, he assumed that Crawford was the perpetrator.

Assuming arguendo that the trial court erred in admitting this testimony, we find that any such error was harmless. "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Lindsey v. State*.[18] "Here, we find it highly unlikely that this isolated statement by [Williams] contributed to the verdict." *Clemmons v. State*.[19] At the time he offered this statement, Williams had already testified that Crawford had shown him a gun and stated that Crawford was going to rob the victim. Given that this testimony was in evidence, therefore, we find it highly unlikely that the jury relied on Williams's subsequent testimony to infer that Crawford had, in fact, attempted to rob the victim. This is particularly so in light of the overwhelming, direct evidence of Crawford's guilt, including the testimony of two eyewitnesses. See *Sandoval v. State*[20] (eyewitness testimony made evidence against defendant overwhelming, despite the existence of conflicting evidence). "In light of th[e] overwhelming[,] competent evidence [of Crawford's guilt], the admission of [this] statement[ ], even if erroneous, amounted to harmless error under the facts of this case." *Miller v. State*.[21]

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED DECEMBER 15, 2009.

*L. Elizabeth Lane*, for appellant.

---

[18] *Lindsey v. State*, 282 Ga. 447, 450 (2) (651 SE2d 66) (2007).
[19] *Clemmons v. State*, 282 Ga. App. 261, 264 (2) (638 SE2d 409) (2006).
[20] *Sandoval v. State*, 264 Ga. 199, 200 (2) (c) (442 SE2d 746) (1994).
[21] *Miller v. State*, 273 Ga. App. 761, 763-764 (2) (615 SE2d 843) (2005).

*Fredric D. Bright, District Attorney, Alison T. Burleson, Assistant District Attorney*, for appellee.