**SECOND DIVISION
MERCIER, C. J.,
MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 26, 2023**

# In the Court of Appeals of Georgia

A23A1012. THE STATE v. ROBERTSON.

HODGES, Judge.

After Brianna Robertson ran over an 11-year-old child with her car, causing his death, a jury convicted her of driving under the influence of alcohol, less safe (OCGA § 40-6-391 (a) (1)), reckless driving (OCGA § 40-6-390), and two counts of first degree homicide by vehicle (OCGA § 40-6-393 (a)), with one count based on DUI and the other on reckless driving.[1] She moved for a new trial, contending that the trial court erred in denying her pre-trial motion to suppress medical records that revealed

---

[1] The jury found Robertson not guilty of simple battery (OCGA § 16-5-23). At sentencing, the trial court vacated the disposition for first degree homicide by vehicle based on reckless driving, citing the First Offender Act. See *Wright v. State*, 304 Ga. App. 651, 654 (4) (a) (697 SE2d 296) (2010) ("Although the State is entitled to charge the same offense in different ways, a vehicular homicide defendant can be convicted only once for the death of each victim.") (citation and punctuation omitted).

her blood-alcohol content ("BAC") because the search warrant was not supported by probable cause, rendering it constitutionally deficient. The trial court agreed and granted her motion for new trial. The State appealed. In its appeal, the State does not argue that the trial court erred in its determination that probable cause was lacking; rather, the State argues that it proved beyond a reasonable doubt that this error was harmless and did not contribute to the verdict on any of the counts, rendering the grant of a new trial erroneous. We agree, and reverse. As will be discussed below, we also vacate Robertson's sentence, in part, and remand the case for resentencing in accordance with this opinion.

On the evening of September 10 and into the early morning hours of September 11, 2017, Robertson attended a party at the house where she lived with her boyfriend and his parents. Robertson told two of the party guests that she did not have to work the following day and was ready to "turn up," meaning it was time to "party." Six attendees reported that Robertson was cradling two bottles of Ciroc, a type of vodka, and seven attendees reported that she was drinking directly out of a large vodka bottle. Six attendees also witnessed her taking multiple shots or having mixed drinks. One partygoer, Tekira Derrisaw, recorded three videos on her phone at various times during the evening showing Robertson at the party. Derrisaw took screenshots from

2

the videos, labeling one screenshot "She drunk asf" and another "fried," referring to Robertson. Screenshots from the videos were time-stamped by Derrisaw's phone between 11:24 p.m. and 1:00 a.m. Both the screenshots and videos were given to the police and shown to the jury.

At some point during the evening, one partygoer, Shyra Slack, was talking with Robertson and Robertson's boyfriend. Slack asked the boyfriend if he was "still the candy man[,]" meaning, was he still the person who "sells weed." This "bothered" Robertson, who followed Slack "cursing" and calling her a "disrespectful 'B.'" This occurred sometime between midnight and approximately 1:00 a.m. Slack called out to her 11-year-old son, Timothy Jones, known as T. J., and another boy who was T. J.'s cousin, telling them it was time to leave. As they walked to her car, Slack heard Robertson swearing at her. She told the boys to "stay right here" while she figured out what was going on. She thought Robertson may have believed that "candy man" referred to something sexual.

Slack walked toward Robertson, who was sitting in her car. Slack stood at the open door of Robertson's car, telling her, "You drunk. You tripping. I'm talking to him about weed." Then, Slack testified, Robertson "put her car in reverse and she backed up and the door hit me and I fell." Slack's son, T. J., ran to the driver's side

3

of Robertson's car and threw a soda can "sideways" into it, saying, "Why did you hit my mother?" Then, Slack testified, "It just happened so quickly. But when I . . . got up, . . . my baby [T. J.] was right there. And, you know, the next thing I know, . . . we were just being run over. She ran over my right leg. The door was still open. She hit the gas and went in reverse and she went — after reverse she hit the gas forward in drive and she ran over on top of [T. J.]. And it was loud and I was just screaming."

T. J's cousin testified that the car was facing toward the road. He averred that Robertson reversed after T. J. threw the can, striking T. J. with the right-side back tire. She then drove forward with T. J. "stuck . . . under the car" on the back bumper, "on the back tire." The car dragged T. J., and he was "laying" in the road. The cousin testified that Robertson did not slow down at all after hitting Slack and T. J. She drove "fast," like she was "flooring it[,]" down the driveway, turned, and hit what he believed to be a stop sign. There was also evidence that she struck a tree and a wooden fence about a quarter of a mile from the house.

Robertson eventually came back to the house, and Slack tried to attack her, testifying, "she ran over my baby." While T. J. was lying injured in the driveway, he told his cousin that he was "okay." The owner of the house where the party was held drove T. J. to the hospital, but T. J. died there several hours later.

4

After T. J. had been taken to the hospital, a police officer responded to the scene at 1:17 a.m., having been told that a child had been struck and the suspect had fled. Robertson, however, was back at the house by then. The evidence at trial, including evidence from the officer's bodycam, indicates he had been on the scene for approximately 46 minutes before questioning Robertson about her drinking, which would have been an hour or more after the accident.

The officer first briefly met with Robertson in the garage about 11 minutes after he arrived. She admitted only to hitting a curb and a tree. When he asked, "[I]f you hit a curb and a tree, why's a child in the hospital right now?" Robertson spread out her hands, asked to step outside, and then began talking about her boyfriend. Eventually, after being on scene for approximately 18 minutes, the officer placed Robertson in the back of the patrol car and walked away. He later returned to the vehicle after he had been on the scene for about 44 minutes. He briefly got inside the car to adjust the air conditioning, then walked away. He returned about two minutes later, opened the car door without getting in, and asked if Robertson had had anything to drink. She told him she had drunk "two shots and a single Solo cup" at about 9 p.m. This was more than two hours before the first timestamped screenshot, which was taken from a video that shows her drinking directly from a large bottle. About 45

5

minutes after this, when the officer had been on the scene for approximately an hour and 25 minutes, his bodycam video shows him telling another officer that Robertson "didn't walk like too slurry," her "speech wasn't slurry," "her breath did smell a little bit fruity" but that he did not know "if it's from drinking a mixed drink . . . or from a soda." After the police had been on the scene for an hour and 33 minutes, a different officer got into the police car with Robertson and said, as recorded on the bodycam, "I don't smell nothing in here."

At trial, the first officer, who had been trained in identifying alcohol impairment, testified that he did not smell alcohol on Robertson, but smelled "a fruity drink that was coming from her somewhere." The officer did not observe slurred speech, glassy eyes, swaying, lack of balance, or inability to walk on Robertson's part. He testified that without doing field sobriety tests, he did not believe he had probable cause to arrest her, and that while nothing impeded his ability to request field sobriety tests, he did not request them. He also testified that he lacked authority to arrest Robertson because others at the scene overrode him. A different officer from the STAR Team, a DUI task force that is part of the DeKalb County Police, testified about being called to assist because "the officers on the scene thought maybe the driver was impaired" and asked for a STAR Team assessment. No STAR DUI Task

6

Force officer was immediately available, however, and the STAR officer sent to the scene had investigated "less than five" DUIs. The STAR officer sat in the enclosed space of the patrol car with Robertson and smelled no alcohol, and did not believe there was probable cause to arrest her for DUI or to seek a warrant for a blood draw.

Eventually, Robertson was let out of the patrol car and allowed to go back to the house. The first officer heard yelling a few minutes later and was told by witnesses that Robertson was injuring herself by banging her head against the ground or the wall. The officer heard her say something about "being regretful of injuring the child" and that it "was all over." Shortly before 5:00 a.m., Robertson was taken to the hospital because she was suicidal. She was admitted at 5:22 a.m. on September 11. Her blood was drawn around 8:25 a.m. that same day, about 7 ½ hours after the incident. At that time, her BAC was .043. Through retrograde extrapolation, which examines the rate at which humans metabolize alcohol, the jury heard evidence that Robertson's BAC would have been between .109 and .221 at the time of the incident. According to expert testimony from a forensic toxicologist, a person within that BAC range might not exhibit indicia such as slurred speech or stumbling if she were an experienced drinker. The evidence of Robertson's BAC was elicited by a search warrant seeking her medical records from the night of the incident, and requested by

7

an investigator for the DeKalb County District Attorney's Office about five months after Robertson's hospital visit.

As outlined above, although the initial trial court denied Robertson's motion to suppress the BAC evidence, a different judge heard Robertson's motion for new trial, which raised the general grounds and also challenged the denial of her motion to suppress. This judge granted Robertson's motion. Again, the State does not argue on appeal that the trial court erred in finding that there was a lack of probable cause for the warrant. Rather, it contends that it has shown beyond a reasonable doubt that the admission of the BAC evidence did not contribute to the verdict on any of the counts. Our Supreme Court has determined that:

> [e]ven if a trial court errs, and "the error is one of constitutional magnitude, it can be harmless error if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming." *Davidson v. State*, 304 Ga. 460, 470 (4) (819 SE2d 452) (2018) (citation and punctuation omitted). When applying a constitutional harmless-error analysis, "we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." *Ensslin v. State*, 308 Ga. 462, 471 (2) (d) (841 SE2d 676) (2020) (citation and punctuation omitted).

8

*Renfro v. State*, 313 Ga. 608, 613 (2) (872 SE2d 283) (2022).

1. The State argues that the trial court erred in granting Robertson's motion for new trial as to Counts 1 and 2. Count 1, in pertinent part, accused Robertson of committing homicide by vehicle in the first degree (OCGA § 40-6-393 (a)) while driving a motor vehicle, by "caus[ing] the death of Timothy Jones, a human being, through the violation of OCGA § 40-6-391 (a) (1), Driving Under the Influence (Less Safe)." Count 2 accused Robertson of driving under the influence of alcohol, less safe. Proof of Robertson's being "under the influence of alcohol" to the extent that she was a less-safe driver was, of course, a required element of proof in these counts.[2] The State contends that any error in the illegal admission of the BAC evidence was harmless as to these counts. We agree.

Again, "we weigh the evidence as we would expect reasonable jurors to have done . . . [.]" (Citation and punctuation omitted.) *Ensslin*, 308 Ga. at 471 (2) (d). The question before us is, even if the BAC evidence had not been admitted in the instant

---

[2] The elements of driving under the influence of alcohol, less safe are: "(1) driving, (2) under the influence of alcohol, (3) to the extent that it is less safe for the person to drive." (Citation and punctuation omitted.) *Hoffman v. State*, 275 Ga. App. 356, 357 (1) (620 SE2d 589) (2005). Robertson does not argue that she was not driving at the time of the incident.

case, whether the remaining legally admitted evidence that Robertson was "under the influence of alcohol" to the extent that she was a less-safe driver is either overwhelming in its own right or cumulative of the illegally admitted evidence such that "there is 'a reasonable possibility' that the improperly admitted evidence [did not] contribute[] to the verdict." (Citation omitted.) *Wingate v. State*, 296 Ga. 21, 27 (2) (c) (764 SE2d 833) (2014). The evidence of Robertson's guilt was both overwhelming and cumulative of other legally admitted evidence.

First, there is no dispute that Robertson had been drinking. In addition to the evidence from other partygoers, as noted above, she told police she drank "two shots and a single Solo cup." At least two witnesses testified that Robertson, who was usually "laid back," became "hyped," "all over the place," and "aggressive" as she drank, and that she was "loud and slurred," "snappy," "stumbling," and "inebriated."

Derrisaw, the woman who took the screenshots and videos, also testified about Robertson's drinking. Darrisaw's first video/screenshot was timestamped 11:24 p.m. and labeled "She drunk asf." Darrisaw testified that she labeled the video "She drunk" because Robertson "was taking the bottle to her head," but that although Robertson was "drinking," Darrisaw did not believe Robertson was "drunk" or "impaired" at the time that she took the video. About forty minutes later, Darrisaw took a second

10

video/screenshot, timestamped 11:41 p.m. Darrisaw testified that by this time, Robertson was acting differently than usual and had become more talkative. Darrisaw then took a third video — the one in which she referred to Robertson as "fried" — more than an hour-and-a-quarter later. This video/screenshot is timestamped 1:00 a.m. Darrisaw testified that soon after taking the third video, she left the party, but had been gone only three minutes or so when her grandmother called to tell her that T. J. had been hit. Darrisaw returned to the party house and found Robertson inside, crying. Asked directly if she believed Robertson should have been driving a car that night, Darrisaw testified, "No." Darrisaw's initial comment — that Robertson was not drunk or impaired — related to her observations an hour-and-a-half *before* Robertson began driving. Darrisaw's comment that Robertson should not have been driving, by contrast, related to her observations of Robertson shortly before and shortly after Robertson actually drove.

Although, as outlined above, the police officers testified that Robertson showed no signs of impairment and that they did not smell alcohol on her, the first officer did not immediately interview Robertson after he arrived, and he did not question her about her drinking until at least an hour after the accident. In addition, the STAR officer did not arrive on scene until even later. See generally *State v. Sanders*, 274

11

Ga. App. 393, 396-397 (617 SE2d 633) (2005) ("In a less safe [DUI] case, the State must prove that the defendant had impaired driving ability as a result of drinking alcohol. It is not necessary for an officer to give his opinion or state specifically that a defendant was a less safe driver, because the trier of fact may form its own opinion based on the indicia pointing to it.") (citations and punctuation omitted).

Shortly after the 1:00 a.m. video was taken, the evidence shows, as outlined above, that Robertson got in her car, hit Slack with the open door, ran over Slack's leg, and then, with Slack screaming, "hit the gas" and "ran over on top of [T. J.]." She drove with T. J. "stuck" under the back bumper, dragging him and not slowing down. She drove about a quarter-mile from the house, hitting a stop sign, a wooden fence, and a tree with such impact that she left behind part of the car's quarter panel. Robertson then drove back to the house, but left her car in the middle of the roadway.

The fact that Robertson was drinking is undisputed. The fact that she was driving is undisputed. The fact that her driving was impaired is amply demonstrated by the litany of damage she caused, as outlined above.

> This is particularly so in light of the overwhelming, direct evidence of [her] guilt, including the testimony of two eyewitnesses [to the accident itself, Slack and T. J.'s cousin, whose] eyewitness testimony made [the] evidence against [Robertson] overwhelming, despite the existence of

12

conflicting evidence. In light of the overwhelming, competent evidence of [Robertson's] guilt, the admission of [her BAC results], even if erroneous, amounted to harmless error under the facts of this case.

(Citations and punctuation omitted.) *Crawford v. State*, 301 Ga. App. 633, 637 (2) (688 SE2d 409) (2009); see *Sandoval v. State*, 264 Ga. 199, 200 (2) (c) (442 SE2d 746) (1994) (finding the admission of challenged evidence harmless where the testimony of eyewitnesses made evidence against defendant overwhelming, despite the existence of conflicting evidence).

Here, before jurors heard any evidence regarding Robertson's BAC results, they heard testimony about her alcohol consumption and changed behavior, including her own admission that she was drinking; they viewed the videos and screenshots of her behavior at the party; they heard eyewitness testimony about Robertson hitting Slack with her car and running over T. J.; and they heard evidence that Robertson hit a tree, a stop sign, and a wooden fence before leaving her car in the middle of the roadway. See *Stoica v. State*, 339 Ga. App. 486, 486-487, 489 (3) (793 SE2d 651) (2016) (upholding the denial of defendant's motion for new trial on his conviction for DUI less safe, which was based on his contention that his blood test results were illegally admitted, by finding that "before the jurors heard any evidence regarding

13

[defendant's] blood test results," they heard testimony regarding defendant's indicia of inebriation which was overwhelming and rendered the admission of the blood test results harmless error); see also *King v. State*, 272 Ga. App. 8, 9-10 (2) (611 SE2d 692) (2005) ("The blood alcohol test result was merely cumulative of other evidence of [the defendant's] less-safe-to-drive condition, and error, if any, was harmless."); *Parker v. State*, 259 Ga. App. 236 (576 SE2d 610) (2003) ("Since [the defendant] was convicted only of driving under the influence to the extent that it was less safe for him to drive . . . , and *not for driving under the influence while having a specific blood alcohol concentration*, the erroneous admission of his State-administered breath test resulted in no harm to him.") (emphasis supplied). Having viewed the evidence as we expect reasonable jurors would have done, *Renfro*, 313 Ga. at 613 (2); *Ensslin*, 308 Ga. at 471 (2) (d), we find that the trial court erred in granting Robertson a new trial on Counts 1 and 2.

2. The State also argues that the trial court erred in granting Robertson's motion for new trial as to Counts 3 and 4, neither of which require proof of alcohol impairment to the extent that Robertson was a less-safe driver. Finding error, we agree.

14

Count 3 charges Robertson with homicide by vehicle under OCGA § 40-6-393 (a) for "unlawfully without malice aforethought[] caus[ing] the death of Timothy Jones, a human being, through violation of OCGA § 40-6-390, Reckless Driving[,]"[3] and Count 4 charges Robertson with reckless driving by driving with "reckless disregard for the safety of persons or property by driving . . . in reverse without seeing if the path was clear thereby striking Timothy Jones and then placing the car in drive without seeing if the roadway was clear thereby striking Timothy Jones."

As Robertson points out, during deliberations, the jury asked the trial court, "[C]an a driver be charged with reckless driving when they have alcohol in their system even if it is not enough to count as a DUI?" The trial court responded: "I would encourage you to consider the entirety of the case that has been presented and also refer you to the charge of the court, specifically, the charge on reckless driving and also the language contained in the indictment . . . specifically the language in Count 4 [reckless driving] . . . ." Counts 3 and 4 in the indictment make no mention of alcohol impairment; nor does the specific charge on reckless driving mention

---

[3] As stated in footnote 1, supra, the trial court at sentencing vacated the disposition on this count.

15

alcohol impairment; nor do the charging statutes themselves, OCGA §§ 40-6-390 and 40-6-393 (a), require alcohol impairment.

Although Robertson argues that the evidence that she was driving recklessly was not overwhelming absent the BAC evidence, the record belies this contention. There was direct, undisputed evidence in the form of eyewitness testimony that after hitting Slack with the car door and after T. J. yelled at her — putting Robertson on notice that people were near her vehicle — Robertson put the car in reverse, then drove forward. There was evidence that T. J.'s mother screamed as this was happening, putting Robertson on notice that something was amiss. As T. J.'s cousin testified, Robertson then reversed again, running over T. J., who was "stuck" on the back bumper, dragging him. Robertson did not slow down at all after hitting T. J., driving "fast," like she was "flooring it." Further, a police officer testified that Robertson, at the scene, recounted that "somebody threw something in her face . . . and she couldn't see and then she got ready to drive off." In other words, the evidence shows that Robertson knew T. J. was near her vehicle and knew that her vision was impaired, but drove her vehicle forward and backward anyway at a high rate of speed, "flooring it." Even absent any consideration of alcohol impairment, the overwhelming evidence shows that Robertson drove the car in a manner that exhibited reckless

16

disregard for T. J.'s safety and, ultimately, caused his death. See *State v. Burrell*, 263 Ga. App. 207, 208 (2) (587 SE2d 298) (2003).

Robertson avers that the jury — given its question to the trial court — might have considered the BAC evidence in assessing whether she was driving recklessly, citing *Fraser v. State*, 263 Ga. App. 764, 766 (1), n. 7 (589 SE2d 329) **(2003).** However, the jury's question appears to indicate the opposite of what Robertson contends, as the jury asked if a driver could be convicted of reckless driving "when they have alcohol in their system *even if it is not enough* to count as a DUI?" (Emphasis supplied.) Even if the jury did consider the alcohol evidence, nothing in the statutes at issue in Counts 3 and 4 makes alcohol impairment an essential element of either crime as charged. This Court has unequivocally determined that "[r]eckless driving and DUI are entirely separate and distinct crimes, requiring a showing of different elements." *Croft v. State*, 278 Ga. App. 107, 108 (2) (628 SE2d 144) (2006). Even absent the BAC evidence, there is overwhelming evidence of Robertson's reckless driving. *Davidson*, 304 Ga. at 470 (4); see generally *Collins v. State*, 359 Ga. App. 338, 338, 340 (1) (857 SE2d 515) (2021) (noting overwhelming evidence of reckless driving where defendant drove at a high rate of speed, did not slow down, ran over spike strips, and hit a car); *Potts v. State*, 296 Ga. App. 242, 242, 247 (4)

17

(674 SE2d 109) (2009) (citing overwhelming evidence of homicide by vehicle and reckless driving where defendant was not charged with DUI, but evidence showed he drank liquor and smoked marijuana, then drove through multiple red lights, made an unlawful turn at a red light, and did not stop after seeing an approaching police car swerve to avoid him and crash, killing the officer inside). The trial court erred in granting the motion for new trial.

3. As noted above, the jury found Robertson guilty of both first degree homicide by vehicle based upon driving under the influence of alcohol-less safe (Count 1) and driving under the influence of alcohol-less safe (Count 2). The trial court sentenced Robertson to 15 years, to serve 8 years in confinement on Count 1; on Count 2, it sentenced her to 12 months to serve and a $3,000.00 fine, concurrent with the sentence on Count 1. Although neither party raises the issue on appeal, Count 2 should have merged into Count 1.

"We have the discretion to correct merger errors sua sponte — regardless of who is harmed by the error and who benefits from its correction — because a merger error results in an illegal and void judgment of conviction and sentence." Dixon v. State, 302 Ga. 691, 697 (4) (808 SE2d 696) (2017). It is well settled that, "[a]lthough a statutory predicate driving offense may be set out as a separate count of the

18

indictment, a defendant may not be convicted of both a lesser included predicate offense and the greater vehicular homicide offense. As we have held, DUI constitutes a lesser included offense of first degree vehicular homicide and therefore merges into the crime of first degree vehicular homicide." (Citation and punctuation omitted.) *Wright v. State*, 304 Ga. App. 651, 655 (4) (c) (697 SE2d 296) (2010). As noted above, the trial court in this case already vacated the disposition on Count 3, which charged Robertson with first degree vehicular homicide based upon reckless driving. After these operations of law, Robertson stands convicted of first degree vehicular homicide based upon driving under the influence of alcohol-less safe; she also stands convicted of reckless driving. See *Wright*, 304 Ga. App. at 655 (4) (c). "Because the trial court failed to merge the appropriate counts, we vacate [Robertson's] sentence [on Counts 1 and 2] and remand for resentencing consistent with this opinion." Id.

*Judgment reversed, sentence vacated in part, and case remanded. Mercier, C. J., concurs and Miller, P. J., concurs in judgment only.*